| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>JULES L. ROSSI, ESQ.<br>208 MAIN STREET 2ND FLOOR<br>ASBURY PARK, NJ 07712<br>Tel: 732-774-5520 Fax: 732-774-5870<br>julrs7@aol.com<br>Attorney for Debtor<br>JR1924 | |
| In Re:<br><br>QUINN-WOODBINE REALTY & LEASING, LLC<br><br>Debtor. | Case No.: 08-33787/JHW<br><br>Adv. No.:<br><br>Hearing Date:   02.09.2009<br><br>Judge:  JHW |

## DEBTOR'S BRIEF IN OPPOSITION TO STAY RELIEF MOTION

### STATEMENT OF FACTS

Banc of America ("Bank") is the assignee of a mortgage made by debtor on debtor's primary asset: 64 acres of land with a commercial building. The Bank filed a foreclosure against the property and filed a civil suit against Michael Quinn, a principal of the debtor, on his personal guarantee of the mortgage obligation. Debtor was not the primary obligor but allowed its property to provide the security for a loan to a related company, who did not own real estate. After both lawsuits were hotly contested, it appeared that a settlement had been reached and that the apparent settlement was placed on the record. A copy of the transcript relating to the proposed settlement is annexed as Exhibit A.

This Court's attention is respectfully directed to page 9, line 20 through page 10, line 11 of the transcript. It will be seen that Mr. Reed, on behalf of the Bank, expresses an opinion that a corporate judgment debtor can agree in advance of a potential bankruptcy to consent to a "lift the bankruptcy stay" to allow a foreclosure to proceed. The trial court then commented that the entity (referring to the primary obligor--an entity related to the debtor –but not the debtor) does not have title to the subject real estate. That discussion regarding the waiver ends at that point. There is no further reference on the record to debtor waiving the automatic stay. Thus, the only reference to the waiver of the automatic stay is Mr. Reed's ruminations that a corporate debtor could waive the automatic stay. The trial judge apparently truncated further discussion of the waiver. It is unclear whether Mr. Reed was referring to the debtor or the related entity—but it is clear that the trial judge believed that Mr. Reed was referring to the primary obligor and not to debtor.

1

Mr. Reed prepared a settlement agreement in accord with what he perceived to be the settlement. The debtor and other defendants disputed some of the terms of the written settlement agreement on the basis that there was never a meeting of the minds on certain provisions incorporated into the proposed written settlement agreement. One of the main disputes centered on the inclusion of a provision which, in substance, provided that the debtor would waive the application of the automatic stay in the event that debtor ultimately filed for bankruptcy protection. (Please refer to paragraph 16, pages 5 and 6 of the proposed settlement document which the moving party has annexed to the moving papers). The Court will observe that the document is not signed.

In light of the unresolved dispute over the terms of the settlement, the Bank moved to enforce the settlement. The trial court granted the motion. The relevant part of the order reads as follows:

> In the event that Quinn Woodbine Realty & Leasing Co., Michael Quinn and/or Marita Quinn seek relief under the Bankruptcy Code, those parties are hereby deemed to waive any and all objections to any application of the Bank to seek relief from the automatic stay under Section 362 of the Bankruptcy Code, and those parties are hereby deemed to have unconditionally consented to lift the stay in the event any one of them seeks relief under the Bankruptcy Code.

The Bank now moves for relief from the automatic stay on two theories: Debtor entered a binding and enforceable prepetition waiver of the automatic stay and the more traditional 11 U.S.C. 362 grounds: There is cause based, inter alia, on the lack of an equity cushion.

Mr. Quinn has submitted a certification which seeks to make two paramount points: Debtor did not consent to a stay waiver and there is an equity cushion. In addition, debtor will file a liquidation which debtor expects will realize a sufficient purchase price to pay all allowed claims.

## LEGAL ARGUMENT

### THERE WAS NO PREPETITION WAIVER OF THE AUTOMATIC STAY AND, IF THERE WERE, THAT WAIVER WOULD NOT BE ENFORCEABLE

The easy way for the Bank to obtain a stay relief order would be for this Court to sustain the Bank's position that debtor waived the stay in the state court proceeding. That appears to be the reason why the Bank has surveyed some of the leading cases in support of its position.

Debtor contends that (a) there was never a waiver of the automatic stay and, therefore, the cases cited by the Bank have no application to the pending matter and (b) assuming arguendo that the stay was waived, that waiver would not be enforceable.

2

## NO WAIVER

The moving party cannot point to one place in the transcript which discusses debtor's waiver of the automatic stay. The references to the waiver appear in the proposed settlement document, which was never agreed to or executed by debtor, and in the court order. It is apparent that the trial judge did not review the record. Had he done so, he would have seen what cannot be seen—a waiver by debtor. Moreover, waiver requires the voluntary relinquishment of a known right. In fact, the dispute over the terms of the settlement document indicates that debtor would not voluntarily relinquish the operation of the automatic stay. Debtor did not relinquish the right to file a bankruptcy or the right to have the automatic stay protect debtor's assets. The trial judge could not waive debtor's rights—only the debtor could. Not a single case has been found where a non-bankruptcy judge entered an order waiving the automatic stay where the would-be debtor did not enter a voluntary waiver agreement.

## ASSUMING WAIVER

Assuming arguendo that debtor is found to have waived the automatic stay, then the cases cited by the Bank are considered. The dispositive problem with the Bank's reliance on the cited cases is that those cases are not Third Circuit cases and, therefore, have no application to the matter under consideration. In particular, the Third Circuit, in Constitution Bank v. Tubbs, 68 F.3d 685 (3d Cir. 1995), stated:

> The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance 'to attempt a repayment or reorganization plan or simply be relieved of financial pressures that drove him into bankruptcy'; and (2) to protect 'creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors.'
>
> The stay is 'automatic' because it is triggered upon the filing of a bankruptcy petition...The automatic stay cannot be waived...."
> (Underline added).[1]

That is the view of the controlling court. Obviously, the Bank has circumnavigated the unfriendly Third Circuit's waters.

---

[1] See also In re Sky Group International, Inc., 108 B.R.86 (Bankr. W.D. Pa. 1989), In the Matter of Izzi, 295 B.R. 754 (E, D. Pa. 2003), In re Vierkant, 240 B.R. 317 (B.A.P. 8th Cir. 1999), all in accord.

Even if it were assumed that the Third Circuit law remained unclear or in doubt, the application of the cases cited by the Bank would not justify vacating the stay.

At the outset, it is noted that in most of the cases relied upon by the Bank, there was an acknowledged waiver by the debtor which was approved in a prior bankruptcy proceeding. [2]

There is no paucity of cases dealing with prepetition stay waivers. Although the cases can be placed in certain broad categories[3], overall it can be stated that the waivers are per se unenforceable (Third Circuit) or not per se enforceable. The not-per-se enforceable courts use certain criteria to determine whether there is justification for protecting the debtor's right to the automatic stay. The criteria include: (1) the consideration given for the waiver; (2) the sophistication of the party making the waiver; (3) the likelihood of a successful reorganization; (4) whether the creditor will be prejudiced by enforcement; and (5) whether other parties will be affected by the waiver. See, e.g. In re Desai,[4] 282 B.R. 527, (Bankr. S. D. Ga. 2002) and In re Frye, 320 B.R. 786 (Bankr. D. Vt. 2005). These final two factors, prejudice to creditors and the binding effect on third parties, demonstrate precisely why section 363 waivers should not be enforced.

If these criteria were applied in the pending case, it will be seen that there is no justification to enforce the alleged waiver. The Bank seeks to justify enforcement of the stay waiver on a theory of prejudice and new consideration. These arguments, however, are unpersuasive because in the event the automatic stay waiver is rendered unenforceable, the Bank remains entitled to its legally established share of property of the estate - the same share to which it was always entitled. The Bank, as a secured creditor, will eventually be paid or will be entitled to retake its collateral or proceeds. So, if we must apply the not-per se line of cases, then in the case sub judice, there is every reason

---

[2] The bankruptcy judge, in the case of In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008), expressed the view that to uphold a prepetition waiver, it was not necessary that there be a prior bankruptcy proceeding in which the waiver was approved by the bankruptcy court. This case appears to be the only case that goes that far.

[3] Courts dealing with prepetition waivers have espoused particular views. For example, In re Club Towers, L.P., supra, reasons that public policy encourages settlements (per se enforceable). In re McBride Estates, Ltd., supra, relied on freedom of contract grounds. Matter of Pease and Constitution Bank v. Tubbs, supra, hold that waivers are per se unenforceable. In re Jenkins Court Assoc. Ltd., supra, reasoned that in single asset cases waivers are per se unenforceable because the public policy behind the automatic stay outweighs the policy favoring settlements and the single-asset debtor's right to file a bankruptcy would be irreparably eroded. Then there are the multi-factor cases, such as Desai, supra, and the prejudice to third-party creditor cases such as In re Sky, supra.

[4] The Bank heavily relies on In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008). This case reflects the philosophy of many of the other not-per-se line of cases. The court held that the plan was not feasible and, therefore, cause exited under 11 U.S.C. 362 (d)(1). Under the Desai standards, the plan was not feasible. What is remarkable about this case and cases of like ilk, at least from debtor's point of view, is that the court is really applying traditional stay-relief standards as announced in United Savings Ass'n of Texas v. Timbres of Inwood Forest Assoc., Ltd., 484 US 365 (1988) to determine whether the waiver is enforceable: The waiver is enforceable because debtor cannot file a feasible plan. Neither this bankruptcy judge nor any other judge in the cited cases had to go astray to determine whether prepetition waivers are enforceable because what all those judges are doing is applying traditional stay-relief law.

not to enforce the waiver: There is an equity cushion[5] to provide adequate protection and there is a reasonable probability that all creditors will be paid upon liquidation. Thus, there is feasibility and if the stay were vacated at this point, all other creditors would be seriously prejudiced. Under those standards, the relief requested by the Bank must be denied. The debtor has provided an appraisal which shows a significant equity cushion. Debtor proposes to liquidate the real estate. The sale price is expected to enough to pay all creditors. Clearly, the plan is feasible and there is a strong likelihood that debtor's plan will be successful.

The effect of enforcement of a section 363 waiver on other creditors is of paramount importance in the pending case. As a general rule, section 362 waivers are not enforceable against third parties. Waivers only relate to the specific parties of the agreement and the identified collateral. See In re Atrium High Point, Ltd. P'ship,189 B.R. 599 (Bankr. M.D.N.C.1995). Here, if the Bank were given its way, all other creditors would sustain extreme prejudice. There will be little likelihood that a foreclosure sale will fetch enough money to pay their claims. A sale in the ordinary course surely provides more hope and a far better chance of receiving a higher price than a fire sale.

The courts acknowledging that waivers may be enforceable by reason of the public policy that encourages out-of-court settlements is the "most compelling reason for enforcement." See In re Cheeks, 167 B.R. B.R. 817 (Bankr. D.S.C. 1994) and In re Tower L.P., 138 B.R. 307 (Bank. N.D. Ga. 1991). Debtor contends that the right to file a bankruptcy is preemptive and is the heavier equity. If out-of-court settlements trumped the provisions of the BAPCPA, filing for bankruptcy would, in many cases, be meaningless. Moreover, a compelling argument can be made that may actually discourage, rather than encourage, out-of-court settlements. This point is illustrated by the case at bar. Because waivers are not self-executing, this litigation has arisen. So has all the rest of the litigation in every case cited by the Bank. The not-per-se enforceable courts would, in every case, have to evaluate whether the criteria were satisfied to sustain                                   the                                   waiver.

Some courts have tried to justify waivers on a freedom-of-contract theory. See In re McBride Estates, Ltd., 154 B.R. 339 (Bank. N.D. Fla. 1993). That position is also flawed. Simply, the Bankruptcy Act allows for the modification and rejection of contracts. See 11 U.S.C. 365 and 11 U.S.C. 502 (allowing claims modifications). Therefore, if the freedom of contract rationale were controlling, the contract modification and contract rejection provisions of the BAPCPA would be rendered nugatory. See Matter of Pease, supra. The most glaring example is the Bankruptcy Act's provision allowing for the modification of creditor's contractual rights in a chapter 11 or 13 plan.

---

[5] This assumes that current appraisal will support the 2006 appraisal which shows there is substantial equity. If a current appraisal does not show sufficient equity, then debtor would surrender—not because of the prepetition waiver but because debtor cannot afford adequate protection payments, there would be no feasibility and there would be no reason to protect other creditors because there would be no dividends.

5

If there are factors that weigh in the Bank's favor, those factors would have to yield to raison d'être of a chapter 11: To protect creditors and the debtor. Therefore, it is the traditional stay-relief standards that debtor believes this Court should apply in deciding this motion. Under those standards, the relief requested by the Bank must be denied.

## CONCLUSION

Although debtor believes that the Third-Circuit rule that prepetition stay waivers[6] are per se unenforceable and, therefore, dispositive of the Bank's waiver theory, debtor has taken considerable time to point out that even if the per-se-unenforceable rule were not preclusive that the application of the cases relied upon by the Bank would support debtor's non-waiver position.

Respectfully submitted,

**/s/ Jules L. Rossi**

Jules L. Rossi

---

[6] It will be remembered that debtor maintains that a voluntary waiver does not exist in fact.

6