

## COMPLETE SUMMARY
## APPRAISAL REPORT

1585 DeHirsch Avenue
Block 125, Lots 7
Woodbine, NJ 08270

### PREPARED FOR

Michael and Marita Quinn
509 Burr Street
Fairfield, Connecticut 06824

### EFFECTIVE DATE

September 23, 2005

### PREPARED BY

J. Paul Bainbridge, MAI, SCGREA
J. P. Bainbridge & Associates, Inc.
300 Goshen Road
Cape May Court House, NJ 08210

**J. P. BAINBRIDGE & ASSOCIATES, INC.**

300 Goshen Road, Cape May Court House, NJ 08210

Tel 609-465-9978 ◆ Fax 609-465-9969

November 9, 2005

Michael and Marita Quinn
509 Burr Street
Fairfield, Connecticut 06824

Re:    1585 DeHirsch Avenue
        Block 125, Lots 7
        Woodbine, NJ 08270

Dear Mr. and Mrs. Quinn:

According to your request, I have appraised the above captioned property for the purpose
of estimating current market value of the fee simple interest in the real estate. The
intended use is to serve as a guide in asset determination. The client and intended user
are the owners, Michael and Marita Quinn, and no other party without the authorization
of the appraiser.

The subject consists of a one-story vacant industrial building, containing 46,512 square
feet of GBA, situated on an irregularly shaped 64-acre site with 542.72 feet of frontage
on DeHirsch Avenue and 2,294 linear feet fronting Dennisville-Petersburg Road (CR
610). Per the client's request, ten acres and the building are valued separate from the
remaining 54 acres.

As a result of my investigation and analysis, I have formed an opinion that, as of
September 23, 2005, subject to the attached assumptions and limiting conditions, the
estimated market value, including the building on ten acres plus excess land is:

TWO MILLION FOUR HUNDRED THOUSAND DOLLARS
($2,400,000)

The attached **complete summary** appraisal report sets forth the pertinent facts about the
subject and the procedure, data, and reasoning leading to the conclusions.

Respectfully submitted,

J. Paul Bainbridge, MAI
State Certified General Real Estate Appraiser

11/28/2008 16:16 FAX           @011
Case 08-33787-JHW    Doc 21-2    Filed 01/29/09    Entered 01/29/09 17:07:06    Desc
Exhibit    Page 3 of 23

 

**GREGORY & REED**
*A Professional Corporation*
2 Sylvan Way, Suite 303
Parsippany, NJ 07054
(973) 898-1400
Attorneys for Plaintiff

| | |
|---|---|
| BANC OF AMERICA LEASING & CAPITAL, LLC, successor by merger of Fleet Capital Corporation, successor by merger to Summit Business Capital Corporation | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIV.: CAPE MAY COUNTY<br>: DOCKET NO.: CPM-L-605-01<br>: |
|              Plaintiff, | :    Civil Action |
| v. | :    **ORDER GRANTING PLAINTIFF'S**<br>:    **MOTION TO ENFORCE** |
| QUINN-WOODBINE REALTY & LEASING CO., L.L.C. and MICHAEL QUINN, | :    **SETTLEMENT AGAINST**<br>:    **DEFENDANTS, QUINN-WOODBINE**<br>:    **LEASING CO., L.L.C.,**<br>:    **QUINN WOODBINE, INC, and** |
|              Defendants. | :    **MICHAEL AND MARITA QUINN** |
| DALEY-HODKIN CORPORATION | : |
|              Intervenor | : |

     **THIS MATTER** having been opened to the Court by counsel for plaintiff seeking an

order to enforce the Settlement Agreement, upon notice to counsel for defendants Quinn-

Woodbine Realty & Leasing Co., LLC and Michael Quinn (the "Quinn Parties" to also

include Quinn Woodbine, Inc. and Marita Quinn), and counsel for Daley Hodkin Corporation,

and the Court having considered all papers submitted by all parties and argument of counsel

on October 31, 2007 (by telephone conference call on the record with Steven Reed, Esq.,

Stephen Barry, Esq., Frank Corrado, Esq. Lewis Schweller, Esq. participating), and for the

reasons set forth during the telephonic hearing on October 31, 2007, and for good cause

shown;

IT IS on this $\underline{\ 20^{r}\ }$ day of November, 2007;

**ORDERED** that plaintiff's motion is granted, and it is further

**ORDERED** that the "SETTLEMENT AGREEMENT" submitted to the Court on

October 18, 2007 and marked as P-1 into evidence by the Court on October 31, 2007, and

which is attached as Exhibit A to this Order (the "Settlement Agreement") is hereby binding

and enforceable against *all ten parties* listed as signatories in the attached Settlement

Agreement without the need for any signatory to sign the Agreement, subject to only the

following four modifications:

1) The start date to trigger the Quinn Parties' eighteen (18) month time frame to pay

the Settlement Amount in Paragraph 6 of the Settlement Agreement (also referenced in

Paragraph 4) shall be deemed to start on **December 1, 2007**, resulting in:

a) the last date for Settlement Payment *as set forth in Paragraph 5 of the Agreement*
shall be on **May 31, 2008**, and

b) the last day for the Quinn Parties to either pay the Settlement Amount or execute a
bona fide contract of sale *under Paragraph 6 of the Agreement* shall be on **November 30,
2008**, and

c) the last day to pay the Settlement Amount *under Paragraph 6 of the Agreement*
shall be on **May 31, 2009**.

d) Schedules A1, A2, B1, B2, C1, C2, and C3 attached to the Settlement Agreement
(as revised given the new start date of December 1, 2007) are the valid and binding payoff
amounts and settlement amounts, and these Schedules and their stated amounts and dates
supersede the stated amounts and stated dates set forth in Paragraphs 1, 4 and 5 of the
Settlement Agreement.

2) Paragraph 12 of the Agreement shall be modified to delete the following

introductory phrase stating "The Quinn Parties acknowledge that," with the rest of the first

sentence and the Paragraph remaining unmodified.

3) In the event that Quinn Woodbine Realty & Leasing Co., Michael Quinn and/or Marita Quinn seek relief under the Bankruptcy Code, those parties are each hereby deemed to waive any and all objections to any application of the Bank to seek relief from the automatic stay under Section 362 of the Bankruptcy Code, and those parties are hereby deemed to have unconditionally consented to lift any future automatic stay in the event any one of them seeks relief under the Bankruptcy Code. ✱ *gcv*

4) the Quinn Parties are hereby deemed to provide their consent to form and entry of the Chancery Division "Order Vacating Stay of the Sheriff Sale" (Docket No. F-16397-01) attached as Exhibit B hereto which form of Order shall be entered by the Court forthwith (without signatures of parties on the form of Order indicating consent), as contemplated in Paragraph 10 of the Settlement Agreement, and it is further

**ORDERED** that plaintiff is hereby authorized and granted permission to deposit the "Daley Hodkin Indemnity Payment" in the amount of $125,000 into the Trust Fund Unit of the Superior Court of New Jersey, as set forth in Paragraph 20 of the Settlement Agreement, and it is further

**ORDERED**, that plaintiff's counsel service a copy of this Order upon all counsel within five (5) days hereof.

_Joseph C. Visalli_

Honorable Joseph C. Visalli, J.S.C.

✱ *Paragraph 16 of agreement is modified supplemented by Paragraph 3 above.*

*The interlineation set out in paragraph 16 are deleted by the Court*

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made this    day of October, 2007 by and between **Banc of America Leasing & Capital, LLC (the "Bank")**, having a principal place of business and mailing address of 111 Westminster Street, Providence, Rhode Island **and** Quinn **Woodbine Realty & Leasing Co., LLC, Quinn Woodbine, Inc., Michael Quinn, Marita Quinn**, having a mailing address of 509 Burr Street, Fairfield, Connecticut 06824 **(these four parties may be referred to as the "Quinn" Parties), Daley Hodkin Corporation, Daley Hodkin Appraisal Corp.**, having a mailing address of 135 Pinelawn Road, Melville, New York 11747, **and Joseph Hodkin, Morris Hodkin, and Cindy Korman (these Daley Hodkin entities may be referred to as the "Daley Hodkin Parties"). All previously listed parties may be referred to as "the Parties."**

## RECITALS

A. The Bank is the holder of a Chancery Division foreclosure judgment in the amount of $647,428.15 entered on August 12, 2002 against Quinn Woodbine Realty & Leasing Co., docket number CPM-F-16397-01(as amended by Order dated November 14, 2003) (the "Foreclosure Judgment") covering certain real estate and improvements located in Woodbine, New Jersey (the "Woodbine Property"), and a Law Division judgment in the amount of $885,613.31 entered on January 15, 2002 against Michael Quinn and Quinn Woodbine Realty & Leasing, LLC, docket number CPM-L-605-01 (as amended by Order dated July 17, 2004) (the "Law Division Judgment") (The Foreclosure Judgment and the Law Division Judgment are hereinafter collectively referred to as the "Judgments").

B. Since at least 2002, the Quinn parties asserted numerous claims in Court and otherwise, against the Bank, including but not limited to claims relating to: 1) the previous lending relationship between the Quinn Parties and the Bank; 2) the entry and calculations of the amounts due of the Law Division and Chancery Judgments; and 3) the auction sale of the Quinn machinery and equipment conducted on April 9, 2002 (the "Auction"), etc.

C. Auctioneer Daley Hodkin Corp. intervened in the Law Division action, CPM-L-605-01.

D. The Court scheduled a bench trial on June 11, 2007 to adjudicate whether the auction sale was conducted in a commercially reasonable manner. Before the trial began on June 11, 2007, the Parties reached a global settlement of the Law Division Judgment and the Foreclosure Judgment, and all claims asserted in those actions, subject to the Bank's final approval and execution of a written agreement. The Parties placed the settlement on the record before the Honorable Joseph C. Visalli, Esq. on June 11, 2007. The Bank's credits extended by the terms of this Settlement Agreement below reflect a compromise of the claim that the auction was not conducted in a commercially reasonable manner, without making any admissions relating to that claim or any other claims.

1

E. On June 18, 2007, the Bank advised the Court that the Bank had obtained its approval of the settlement terms placed on the record on June 11, 2007 and that the Parties were preparing a written settlement agreement.

**THEREFORE**, in consideration of the mutual promises and covenants set forth below and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties hereby agree that the Recitals set forth above are true and correct, and agree as follows:

## THE SETTLEMENT BETWEEN THE BANK AND QUINN PARTIES

1. The Quinn Parties acknowledge, agree and stipulate to the accuracy and validity of the Bank's calculations of balances of the Judgments due and owing, as set forth in the spreadsheets attached hereto: *Chancery Division*: $905,156.30 as of November 20, 2007 *(Sched. A1)* and $986,830.47 as of April 30, 2009 *(Sched. A2)*; *Law Division*: $657,528.97 as of November 30, 2007 *(Sched. B1)* and $699,583.86 as of April 30, 2009 *(Sched. B2)* (which balances are prior to any contingent forgiveness or compromise as contemplated in this settlement). Further, the Quinn Parties agree to the Bank's method of calculating the balances due on the Judgments as set forth in said Exhibits and the Quinn Parties agree and stipulate to never again challenge those Judgments in any manner whatsoever, in Court or otherwise.

2. The balances due on the Chancery Division Judgment and the Settlement Amount (as defined below) shall be increased in an amount equal to any amount(s) the Bank shall make for payment (advance or otherwise) of real estate taxes, tax liens (including tax principal amounts, penalties, interest, costs, etc.), payment of utilities, maintenance of property expenses, and fines and penalties on the property of any nature. The Bank, however, has no obligation to make any advances as this is within its sole discretion. The Quinn Parties hereby unconditionally consent to any future application or motion that the Bank may make to request that Chancery Court and/or the foreclosure unit in Chancery to amend the Foreclosure Judgment to include any and all such payment/advances upon proof of same to the Foreclosure Unit or Chancery Court. The Quinn Parties unconditionally agree to waive any right to challenge any future advance and any request to amend for proven paid expenses. The Bank will provide the Quinn Parties with an updated payoff of the amount due on the Chancery Division judgment in the event that the Bank has to make any future payments/advances as set forth above in this paragraph.

3. In the event that the Quinn Parties pay the Settlement Amount described below in a timely manner, the Quinn Parties and the Bank agree to each pay 50% of any and all sheriff's fees, payable at the time that the Quinn Parties pay the Settlement Amount described below, or at any such earlier time that the Sheriff or the law requires that such fees be paid. The Quinn Parties acknowledge and agree that their 50% portion of the sheriff's fee amount must be paid at the time that the Settlement Amount is paid to the Bank (or earlier if required by the Sheriff), whether at the closing of the Woodbine Property (where said sheriff fee shall be included in closing statement with check sent directly to sheriff's office, copy to all counsel) or otherwise if the Woodbine Property is not sold but the Settlement Amount payment is made, and that the

2

sheriff fee must be paid whether or not the Woodbine Property is sold. This sharing of the sheriff's fees does not apply if the Woodbine Property is sold at a sheriff sale. In such event, the total sheriff fees as calculated by the Sheriff will be added to the Judgment amount due.

4. The Bank agrees to credit or reduce the Chancery Division Judgment effective as of 8/12/2002 and the Law Division Judgment as of 4/9/2002 by the sum of **$200,000.00** and accept the reduced Chancery Division Judgment (the "Settlement Amount") *if* said Settlement Amount is paid in within the time frames set forth below and subject to the Quinn Parties' performance of certain items as set forth below. The Settlement Amount will be less if paid before April 30, 2009 due to less post judgment interest being charged depending on the date of the payment. The Quinn Parties will advise the Bank of the date that the Settlement Amount will be paid and the Bank will calculate the Settlement Amount that will be due on that date. For example, the Quinn Parties agree and stipulate that the Settlement Amount will be the amount of $706,073.62, plus any amounts advanced by Bank pursuant to Section 2 hereof, if paid on the last day allowed under this Agreement (April 30, 2009), as per the attached Schedule C1 (assuming compliance with the other real estate contract provisions below).

5. The Bank will accept the Settlement Amount as defined above, minus an additional **$25,000.00** to satisfy both Judgments if the Settlement Amount (less the $25,000) is paid on or by April 30, 2008 (the "Settlement Payment Date"). As an example, the Quinn Parties agree and stipulate that the Settlement Amount will be the amount of $640,998.28, plus any amounts advanced by Bank pursuant to Section 2 hereof, if paid on January 31, 2008, as per the attached Schedule C2, or, for example, the amount of $648,925.27, plus any amounts advanced by Bank pursuant to Section 2 hereof, if paid on the last day of this discount period, April 30, 2008, as per the attached Schedule C3.

6. In the event that the Quinn Parties are unable to pay the Settlement Amount on or before the Settlement Payment Date, the Bank agrees to allow the Quinn Parties until October 31, 2008 to either a) pay the Settlement Amount, or b) execute a bona fide contract for sale of the Woodbine Property (the "Sales Agreement"). Provided that the Quinn Parties have entered into a Sales Agreement by October 31, 2008, the Quinn Parties shall have until April 30, 2009 (the "Extended Settlement Payment Date") to pay the Settlement Amount and the Bank shall accept the Settlement Amount, plus any amounts advanced by Bank pursuant to Section 2 hereof, in full satisfaction of the Judgments. If, after October 31, 2008, any contract buyer decides to terminate any Sales Agreement **and** such termination is not due to any fault, act or omission by the Quinn Parties, the Quinn Parties shall have sixty (60) days from the date of the buyer's written notice of cancellation (or from the date of any oral cancellation to the Quinn Parties), to pay the Settlement Amount. This sixty (60) day extension shall not, however, under any circumstance, allow the Settlement Amount to be paid after April 30, 2009, which is the absolute last day that the Quinn Parties can obtain the benefit of paying the Settlement Amount. For example, if the buyer cancels the Sales Agreement on March 15, 2009, then the Quinn parties will not have the full sixty days to pay the Settlement Amount as payment must by made by April 30, 2009. Failure to strictly comply with the timing and payment procedures in the Agreement means that the Bank's obligation to accept the Settlement Amount shall immediately become null and void

3

and the **full** amount of the Law Division and the Chancery/Foreclosure Judgments (no credits or reductions) shall be immediately due and payable and enforceable as set forth below.

7. The Bank agrees that payment of the Settlement Amount in accordance with the timeframes specified above, exchange of releases, and the Quinn Parties' compliance with other provisions of this Agreement shall settle and resolve both the Law Division Judgment *and* the Foreclosure Judgment in their entireties.

8. Time is of the essence with respect to payment of the Settlement Amount and all other deadlines provided in this Agreement. Strict compliance is mandatory. There is no grace period. The Quinn Parties can make partial payment(s) under this Agreement which would reduce future accruing post judgment interest. The Bank shall not be required to release its foreclosure judgment lien (in whole or in part) on the Woodbine Property unless the total amount of Settlement Amount is received by the Bank in compliance with the terms of this Settlement Agreement.

9. The Quinn Parties agree to forthwith provide the Bank with copies of all Sales Contracts, addendums, riders, notices of cancellations of contract(s), etc. and closing statements etc. in connection with the sale of the Woodbine Property. The Quinn Parties shall advise the Bank of the closing date for the sale of the Woodbine Property and shall direct the Woodbine Property closing agent to include the Settlement Amount in the closing statement so that the Settlement Amount is paid to the Bank in clear funds from the sale proceeds. A representative of the Bank shall be allowed to attend the closing to pick up its check if it so desires.

10. Contemporaneously with the execution of this Agreement, the Quinn Parties shall execute a consent order (the "Consent Order"), in the form attached hereto as Exhibit A, to vacate the existing stay of the sheriff sale in the Foreclosure/Chancery Court in order to allow the sheriff sale to proceed without any delay or objection in the event that the Quinn Parties do not comply with the terms of this Agreement. Upon receipt of the fully executed Consent Order, the Bank will execute it and immediately send it to the Chancery Court for entry. The Bank will not request the sheriff to schedule a sheriff sale unless the Quinn Parties default under this Agreement. The Quinn Parties further unconditionally waive their rights to request any sheriff statutory adjournments of the sheriff sale, and the Quinn Parties waive their right of redemption.

11. The Settlement Amount shall be made payable to **"Banc of America Leasing & Capital, LLC"** and shall be sent to Edward W. Wilson at the address below, with a copy to Steven J. Reed, Esq.:

> Edward W. Wilson
> Banc of America Strategic Solutions, Inc.
> RI 1-102-15-01
> 111 Westminster Street
> Providence, RI 02903

4

12. The Quinn Parties acknowledge that, pursuant to Internal Revenue Code 61(a)(12) (or any other applicable provision) the Bank will report to the Internal Revenue Service (via a Form 1099c or other appropriate form) (and report to any other necessary state taxing authority), the credits or reductions as set forth in Paragraphs 4 and 5 above. The Quinn Parties fully release and discharge the Bank of all claims and liability (and the Bank makes no representation, express or implied to the Quinns) as to whether the IRS or any state taxing authority considers the credits as "debt forgiveness" and taxable income to one or more of the Quinn Parties.

13. If the Settlement Amount is not paid to Bank under the terms of this Agreement, then the Bank will be entitled to immediately, and without any further notice to the Quinn Parties, take any and every action to enforce, recover and collect on:

1) the full balance due on the Foreclosure/Chancery Judgment (as set forth on Schedules A1 and A2 attached hereto and incorporated herein, and as same may be subsequently amended for any advances etc., with no settlement amount reduction) from the Woodbine Property via an uncontested foreclosure and sheriff sale, regardless of whether the Bank also decides to go forward with collection and enforcement of the Law Division Judgment, *and*

2) the full balance due on the Law Division Judgment with no settlement amount reduction (as set forth on Schedule B1 and B2 attached hereto and incorporated herein), regardless of whether the Bank decides to also go forward with the sheriff sale on the Woodbine property.

Any recovery of money on one judgment would also be a credit to the other judgment.

14. The Quinn Parties agree to provide their full cooperation to the Bank in the event the Quinn Parties default under this Agreement, in order to facilitate the Bank's uncontested sheriff sale and other collection efforts.

15. Upon: 1) the Quinn Parties execution of the Bank's form of indemnification and nondisclosure agreement relating to environmental reports (the "Environmental Indemnity Agreement"), and 2) the Quinn Parties execution of this Agreement, the Bank will provide Michael Quinn with a copy of the Bank's environmental Phase I and Phase II reports for the Woodbine Property without charge to the Quinn Parties. The Quinn Parties agree not to disclose the environmental reports to any third party unless Bank expressly agrees to any such disclosure in writing and in advance for each or every party to which the Quinn Parties so request, and only if those third parties also sign an Environmental Indemnity Agreement. The Bank shall have no obligation whatsoever to the Quinn Parties to allow disclosure to any other party. This will be in the sole and absolute discretion of the Bank notwithstanding such third party's willingness to execute an Environmental Indemnity Agreement. The Quinn Parties acknowledge that the Bank has made no representation to them regarding the environmental condition of the Woodbine Property.

16. Quinn Woodbine, Inc. filed bankruptcy and its assets were liquidated by a trustee. The Quinn Parties shall be deemed in default under this Agreement in the event any of the other Quinn Parties file bankruptcy. The other Quinn Parties represent that it is not their intention to file bankruptcy. In the event Quinn Woodbine Realty & Leasing Co. ("Leasing") shall: (i) file

5

with any bankruptcy court of competent jurisdiction or be the subject of any petition under the Bankruptcy Code; (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator or liquidator; or (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors (all of the foregoing herein collectively and individually referred to as an "**Insolvency Proceeding**"), then, subject to court approval: (a) Bank shall thereupon be entitled and Leasing irrevocably consents to, and, irrevocably waives its right to object to, such relief from automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Bank as provided this Agreement and as otherwise provided by law, ~~and (b) Bank shall be entitled to the immediate dismissal of such case pursuant to § 305(a)(1) of the Bankruptcy Code (with attorney's fees and other costs), and Leasing agrees that such dismissal will be in the interests of creditors and itself; and (c) Bank shall be entitled to the immediate dismissal of such case under § 1112(b) of the Bankruptcy Code for cause, and Leasing agrees that the filing of such case by it shall per se be deemed to have been commenced in bad faith and solely for the improper purpose of impeding the exercise of Bank's rights and remedies with attendant unnecessary delay and needless cost.~~

17. The Quinn Parties (Quinn Woodbine Realty & Leasing Co., LLC Quinn Woodbine, Inc., Michael Quinn, and Marita Quinn) and those parties' employees, agents, heirs, assigns, successors and representatives, *effective upon the execution of this Agreement*, jointly and severally, release, acquit and forever discharge 1) the Bank **and** 2) the Daley Hodkin Parties, including the Bank's and the Daley Hodkin Parties' agents, employees, attorneys, successors and assigns both present and former of and from any and all manner of action and actions, cause and causes of action, suits, appeals, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in contract, tort, law or in equity against the Bank or the Daley Hodkin Parties which these releasing Quinn Parties ever had, now have or which any releasing party ever had or now has upon or by reason of any matter, cause, causes or thing whatsoever, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated.

18. The Bank and its agents, assigns, predecessors, and successors, *effective upon the Quinn Parties' full compliance with this Agreement including, without limitation, the timely payment of the Settlement Amount*, release, acquit and forever discharge the Quinn Parties, their agents, employees, attorneys, successors and assigns both present and former of and from any and all manner of action and actions, cause and causes of action, suits, appeals, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in contract, tort, law or in equity which the Bank ever had, now have or which any the releasing party ever had or now has upon or by reason of any matter, cause, causes or thing whatsoever, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated. Notwithstanding any other term or provision contained herein to the contrary, this release by the Bank and this Agreement shall not in any

6

manner whatsoever waive, release, modify or otherwise affect the Bank's rights and remedies regarding any loan or credit transactions or any other obligations of the Quinn Parties other than the loans that were the subject of the Law Division case or the Chancery Division case referenced above.

19. Upon compliance with this Agreement (full payment of the Settlement Amount, etc.), the Bank will dismiss the current Law Division and Chancery actions with prejudice and terminate the two Judgments. Upon signing this Agreement, the Law Division case will be marked "settled" (dismissed without prejudice pursuant to the terms of this Agreement) pending compliance with this Agreement. The Chancery case will be marked in such appropriate way so that the sheriff sale can be rescheduled as soon as possible in the event that the Quinn Parties default under this Agreement.

## THE SETTLEMENT BETWEEN THE BANK AND THE DALEY HODKIN PARTIES.

20. The Bank and Daley Hodkin Corporation agree to resolve the cross claims for indemnification under the auction contract dated January 24, 2002 by the Bank depositing the total amount of $125,000 (the "DH Indemnity Payment") into the Trust Fund Unit of Superior Court upon notice to Daley Hodkin Corporation and on notice to the law firm of Sullivan & Manarel which law firm has asserted an attorney lien on any proceeds paid to Daley Hodkin Corporation. The Bank and Daley Hodkin Corporation will cooperate and work together to follow appropriate procedures (consent order and/or interpleader complaint naming Daley Hodkin Corporation and Sullivan Manarel etc.) to effectuate the deposit of the funds The Bank and Daley Hodkin Corporation ("Daley Hodkin") agree that, within seven (7) days of execution of this Agreement, they will submit a consent order, to be drafted by Bank's counsel, to the Court (Law Division, CPM-L-605-01) to permit the deposit of the DH Indemnity Payment and thereby relieve the Bank from the controversy. The Bank agrees to deposit the DH Indemnity Payment with the Court within ten (10) days of receipt of the Court order allowing the Bank to make the deposit. The Bank and Daley Hodkin agree that the Bank will *first* attempt to have the Court enter a consent order signed by the Bank and Daley Hodkin to allow the deposit of the funds in Court and to thereby extricate the Bank from the dispute between Daley Hodkin and Sullivan & Manarel. If the Court disapproves of or fails to enter the proposed Consent Order for any reason, the Bank shall, within fourteen (14) days of such disapproval or failure (but in any event, no later than twenty (20) days from the day that the Consent Order was sent to the Court), either 1) file an interpleader action seeking to permit said deposit into Court and to permit the dismissal of the Bank from that action (this would create a separate docket number and would name Daley Hodkin Corporation and Sullivan & Manarel as defendants and seek to relieve the Bank from the controversy etc.), or 2) follow any other necessary steps required by the Court to permit the Bank to deposit said funds in Court on notice to Daley Hodkin and Sullivan & Manarel, and to thereby extricate and dismiss the Bank from the action.

21. Daley Hodkin Corp. and Daley Hodkin Appraisal Corp., Joseph Hodkin, Morris Hodkin and Cindy Korman (as to any legal fees and costs that may be owed to her for representation of the Daley Hodkin Parties), and those parties' employees, agents, heirs, assigns, successors and representatives, effective upon the execution of this Agreement, jointly and

7

severally, release, acquit and forever discharge the Bank **and** the Quinn Parties, their agents, employees, attorneys, successors and assigns both present and former of and from any and all manner of action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims, cross claims, indemnifications, and demands whatsoever, asserted or unasserted, in contract, tort, law or in equity against Bank or the Quinn Parties which these releasing parties ever had, now have or which any releasing party ever had or now has upon or by reason of any matter, cause, causes or thing whatsoever up to the date of this Agreement, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated. This release is related and limited to the claims and cross claims, indemnifications etc. arising from and/or related to the litigation in the Law Division case (CPM-L-605-01) relating to the commercial reasonableness of the Auction. The Daley Hodkin Parties' release, and other agreements herein, are effective upon execution of this Agreement. However, the Daley Hodkin release shall be rescinded if the Bank fails to deposit the DH Indemnity Payment into the Trust Fund Unit of Superior Court under the terms set forth above in Paragraph 20 of this Agreement; provided, however, that such right of rescission shall not be construed as relieving the Bank of its obligation to deposit the DH Indemnity Payment as set forth in paragraph 20, which obligation is not conditional or subject to the Bank choosing to comply, or not, with such obligation. If such right of rescission has been exercised, due to the Bank's failure to make the DH Indemnity Payment as required by paragraph 20, then such rescission shall be rescinded upon the Bank depositing the DH Indemnity Payment. Notwithstanding the above, this release by Cindy Korman is without prejudice to Cindy Korman collecting her legal fees and costs from the DH Indemnity Payment or any other person other than the Bank and the Quinn Parties.

These releasing parties (Daley Hodkin Corp., Daley Hodkin Appraisal Corp., Joseph Hodkin, Morris Hodkin and Cindy Korman) agree not to take any action whatsoever to involve the Bank in the pending lawsuit in New York filed by Sullivan & Manarel against Daley Hodkin et al., including but not limited to, the filing of any third party complaint against the Bank, which right the Daley Hodkin Parties have waived and released herein, subject, however, to the Bank depositing the DH Indemnity Payment as required by paragraph 20; provided, however, that the foregoing shall not be construed as relieving the Bank of its obligation to deposit the DH Indemnity Payment as set forth in paragraph 20, which obligation is not conditional or subject to the Bank choosing to comply, or not, with such obligation. If the Daley Hodkin Parties have taken action to involve the Bank in such suit due to the Bank's failure to make such deposit of the DH Indemnity Payment pursuant to paragraph 20, then, upon the Bank making such deposit, the Daley Hodkin Parties shall dismiss their claims in such suit against the Bank.

Notwithstanding any other term or provision contained herein to the contrary, this release by the Daley Hodkin Parties and this Agreement shall not in any manner whatsoever waive, release, modify or otherwise affect the Daley Hodkin Parties' rights and remedies regarding any loan, credit or banking transactions or other obligations in connection therewith of the Bank with or to the Daley Hodkin Parties, if any.

22. The Bank and its agents, assigns, predecessors, and successors, effective upon signing this Agreement, release, acquit and forever discharge the Daley Hodkin Corp. and Daley Hodkin Appraisal Corp. from any and all manner of action and actions, cause and causes of action, suits, appeals, debts, controversies, damages, judgments, executions, claims, cross claims,

indemnifications, and demands whatsoever, asserted or unasserted, in contract, tort, law or in equity which the Bank ever had, now have or which any the releasing party ever had or now has upon or by reason of any matter, cause, causes or thing whatsoever up to the date of this Agreement, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated. This release is related and limited to the claims and cross claims, indemnifications etc. arising from and/or related to the litigation in the Law Division case (CPM-L-605-01) relating to the commercial reasonableness of the Auction. Notwithstanding any other term or provision contained herein to the contrary, this release by the Bank and this Agreement shall not in any manner whatsoever waive, release, modify or otherwise affect Bank's rights and remedies regarding any loan or credit transactions or other obligations of the Daley Hodkin Parties with or to the Bank, if any.

## OTHER AGREEMENTS, ACKNOWLEDGMENTS, REPRESENTATIONS AND WARRANTIES, ETC.

The Parties acknowledge, represent, affirm and confirm the following:

A. The Parties have read this Agreement, understand the effect and scope of this Agreement as their free and voluntary act, without any duress, coercion or undue influence, and has been advised to seek legal counsel of their choice in carefully reviewing, discussing and considering all terms of this Agreement.

B. The Parties' execution and delivery of this Agreement is not based upon reliance upon any representation, understanding or agreement not expressly set forth herein. Neither the Bank nor any other Party, nor any representative, have made any representations to any other party (or such party's agent) not expressly set forth herein.

C. The Parties have full and complete authorization and power to execute this Agreement. This Agreement is a valid, binding and enforceable obligation of the Parties and does not violate any law, rule or regulation, or any contract or agreement to which the Parties are a party.

D. If any Party files any court proceeding to enforce this Agreement in the Law Division case or any action in the Foreclosure/Chancery Division case, or otherwise, the prevailing party in such litigation shall be entitled to its reasonable attorney's fees and costs incurred in connection therewith, in addition to any other appropriate remedies. The Bank shall be entitled to its reasonable attorneys fees and costs, without regard to whether it is a prevailing party, for any efforts taken to preserve, protect, or enforce its rights in bankruptcy court in the event that any Quinn Party files for bankruptcy in the future. To the extent permitted by law, as used in this paragraph, "attorneys' fees" includes the allocated cost of the Bank's in-house counsel.

In the event that the Quinn Parties request that the Bank modify any provision of this Agreement, and the Bank agrees to do so (the Bank shall have absolutely no obligation whatsoever to modify any term under any circumstances), the Quinn Parties shall pay the Bank's reasonable attorneys fees and costs incurred for any such modification at the time the modification is made.

9

E. This Settlement Agreement shall be governed by, construed and enforced in accordance with, and subject to the laws of the State of New Jersey without regard to choice of law principles. Any proceedings to enforce this Agreement, including any equitable or non-equitable remedies at law, shall be brought before the Superior Court of New Jersey, Cape May County.

F.   It is understood and agreed that this is a compromise of disputed claims and that the considerations transferred herein are to compromise disputed claims, avoid further litigation and buy peace, and that nothing contained herein shall be construed as an admission of liability by, or on behalf of any of, the Parties to this Agreement, any and all such liability being expressly denied.

G.  Article and paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement.

H.  Any notice or demand required or permitted to be given or made hereunder to or upon any Party hereto shall be deemed to have been duly given or made for all purposes if (a) in writing and sent by (i) messenger or an overnight courier service against receipt, or (ii) certified or registered mail, postage paid, return receipt requested, or (b) sent by facsimile, provided that a written copy thereof is sent on the same day by postage-paid first-class mail to such Party at the address listed herein below or such other address as any Party hereto may at any time direct by notice given to the other Parties in accordance with this paragraph:

> Michael and Marita Quinn
> 509 Burr Street
> Fairfield, CT 06824
>
> **With A Copy To:**
> Frank L. Corrado, Esq.
> Barry, Corrado, Grassi & Gibson, P.C.
> 2700 Pacific Avenue
> Wildwood, NJ 08260
>
>
> Edward W. Wilson
> Banc of America Strategic Solutions, Inc.
> RI 1-102-15-01
> 111 Westminster Street
> Providence, RI 02903
>
> **With A Copy To:**
> Steven J. Reed, Esq.
> Gregory & Reed, P.C.
> 2 Sylvan Way, Suite 303
> Parsippany, NJ 07054

10

Joseph Hodkin
Morris Hodkin
Cindy Korman
The Daley Hodkin Corp. and
The Daley Hodkin Appraisal Corp.
c/o The Daley Hodkin Group
P.O. Box 1229
Melville, New York 11747-1229

**With A Copy to:**
Lewis J. Schweller, Esq.
Suite E-5
Linwood Commons
2106 New Road
Linwood, New Jersey 08221


I.  SEVERABILITY.  If any term, provision covenant or condition of this Agreement is
held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of
the provisions shall remain in full force and effect and shall in no way be affected, impaired or
invalidated. This Agreement is, and shall be deemed to be, the product of joint drafting by the
parties hereto and shall not be construed against any of them as the drafter hereof.

J.  COUNTERPARTS.  This Agreement may be executed in multiple identical
counterparts, each of which, when duly executed, shall be deemed an original, and all of which
shall be construed together as one agreement. This Agreement will not be binding on or
constitute evidence of a contract between the parties hereto until such time as all Parties have
executed this Agreement and this Agreement fully executed has been delivered (which may be
by counterpart) to all Parties.

K.  TIME IS OF THE ESSENCE.  Time shall be of the essence with respect to each and
every of the various undertakings and obligations as set forth in the Agreement.

L.  NO MODIFICATION OR WAIVER.  None of the terms or provisions of this
Agreement may be changed, waived, modified, discharged or terminated except by an instrument
in writing executed by the party against whom or as to which enforcement of the change, waiver,
modification, discharge or termination is asserted. None of the terms or provisions of this
Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures
to enforce the same. This Agreement supersedes all previous written documents, including
without limitation, any term sheet or other document.  This Agreement cannot be contradicted
by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of
the Parties.

M.  SUCCESSORS AND ASSIGNS.  All rights of the Bank hereunder shall inure to the
benefit of the Bank's successors and assigns and all obligations of any Party hereunder shall bind
the successors, assigns, heirs, administrators, executors and legal representatives and/or the
estate of such Party.

11

11/28/2008 16:19 FAX                                                    ☑025
Case 08-33787-JHW    Doc 21-2    Filed 01/29/09    Entered 01/29/09 17:07:06    Desc
Exhibit    Page 17 of 23

N. <u>WAIVER OF JURY TRIAL</u>. THE PARTIES KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE OR HEREAFTER HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE UNDERLYING TRANSACTIONS.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**BANC OF AMERICA LEASING & CAPITAL, LLC**

By:_____
    Edward W. Wilson
    Dated: October_____, 2007

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**QUINN WOODBINE REALTY &**
**LEASING CO., LLC**

**QUINN WOODBINE, INC.**

By:_____
   Michael Quinn
   Dated: October ____, 2007

By:_____
   Michael Quinn
   Dated: October ____, 2007

Sworn to and Subscribed before me
this _____ day of _____, 2007.

_____
**Michael Quinn**, Individually
Dated: October ____, 2007

_____

Sworn to and Subscribed before me
this _____ day of _____, 2007.

_____
**Marita Quinn**, Individually
Dated: October ___, 2007

_____

14

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**DALEY HODKIN CORPORATION**                    **DALEY HODKIN APPRAISAL CORP.**

By:_____                    By:_____
   Joseph Hodkin                                   Joseph Hodkin
   Dated: October ___, 2007                         Dated: October ___, 2007


By:_____
   Joseph Hodkin, individually
   Dated: October ____, 2007

                     Sworn to and Subscribed before me
                     this _____ day of _____, 2007.


By:_____
   Morris Hodkin, individually
   Dated: October ___, 2007

                     Sworn to and Subscribed before me
                     this _____ day of _____, 2007.


By:_____
   Cindy Korman, individually
   Dated: October ___, 2007

                     Sworn to and Subscribed before me
                     this _____ day of _____, 2007.

**Schedule C.1 Chancery Division Settlement Payment as of 5/31/09**          11/14/2007



**Bank of America**

Banc of Amercia Leasing & Capital, LLC
Judgment Accounting Ledger
Quinn-Woodbine, Inc. - Loan No. QUI
Prepared by E. Wilson

### *Chancery Division Judgment*

| | | |
|---|---:|---|
| $ | 647,428.15 | Original Judgment (08/12/02) |
| | | (per order dated Nov. 14, 2003 by Judge Seltzer correcting clerical mistake) |
| | (200,000.00) | Settlement Reduction |
| | 530,500.79 | Current Principal Judgment Amount |
| | 6,707.60 | Plus Costs of Action |
| | 156,939.30 | Plus Post-Judgment Interest to 5/31/09 |
| | 694,147.69 | Settlement Payment if paid on 5/31/09 |
| $ | 6,966.48 | Plus 50% of Sheriff's Fees |
| **$** | **701,114.16** | **Total Settlement Payment if paid on 5/31/09** |

### Judgment Interest Calculation

| (Payment) Advance | Amount | Interest Rate | Date | Days | Per Diem | Accrued Interest |
|---|---|---|---|---|---|---|
| | $ 447,428.15 | 8.00% | 12/31/02 | 141 | $ 98.07 | $ 13,827.37 |
| | $ 447,428.15 | 5.00% | 12/31/03 | 365 | $ 61.29 | $ 22,371.41 |
| | $ 447,428.15 | 4.00% | 02/02/04 | 33 | $ 49.03 | $ 1,618.10 |
| $ (46,666.66) | $ 400,761.49 | 4.00% | 2/3/04-12/31/04 | 333 | $ 43.92 | $ 14,625.05 |
| | $ 400,761.49 | 3.00% | 12/31/05 | 365 | $ 32.94 | $ 12,022.84 |
| | $ 400,761.49 | 4.00% | 12/05/06 | 340 | $ 43.92 | $ 14,932.48 |
| $ 82,589.96 | $ 483,351.45 | 4.00% | 12/6/06-12/31/06 | 25 | $ 52.97 | $ 1,324.25 |
| | $ 483,351.45 | 6.00% | 03/31/07 | 90 | $ 79.46 | $ 7,150.95 |
| $ 47,149.34 | $ 530,500.79 | 6.00% | 4/1/07 -12/31/07 | 275 | $ 87.21 | $ 23,981.54 |
| | $ 530,500.79 | 8.00% | 05/31/09 | 517 | $ 87.21 | $ 45,085.30 |
| | **Totals** | | | **2,484** | | **$ 156,939.30** |

**Sheriff's Fees**

| | | | |
|---|---|---|---|
| $689,147.69 | | 2% | $13,782.95 |
| $ 5,000.00 | | 3% | $ 150.00 |
| $694,147.69 | | | $13,932.95 |
| | | | $ 6,966.48 |

**Schedule A.2 Chancery Division Payoff as of 5/31/09**          11/14/2007



Banc of Amercia Leasing & Capital, LLC
Judgment Accounting Ledger
Quinn-Woodbine, Inc. - Loan No. QUI
Prepared by E. Wilson

### *Chancery Division Judgment*

$      647,428.15  Original Judgment (08/12/02)
                          (per order dated Nov. 14, 2003 by Judge Seltzer correcting clerical mistake)

        730,500.79  Current Principal Judgment Amount
          6,707.60  Plus Costs of Action
        224,139.30  Plus Post-Judgment Interest to 5/31/09

**$  961,347.69  Total Payoff (plus any and all sheriff's fees as based on statute)**

#### Judgment Interest Calculation

| (Payment) Advance | Amount | Interest Rate | Date | Days | Per Diem | Accrued Interest |
|---|---|---|---|---|---|---|
| | $  647,428.15 | 8.00% | 12/31/02 | 141 | $  141.90 | $  20,008.19 |
| | $  647,428.15 | 5.00% | 12/31/03 | 365 | $  88.69 | $  32,371.41 |
| | $  647,428.15 | 4.00% | 02/02/04 | 33 | $  70.95 | $  2,341.38 |
| ($46,666.66) | $  600,761.49 | 4.00% | 2/3/04 - 12/31/04 | 333 | $  65.84 | $  21,923.68 |
| | $  600,761.49 | 3.00% | 12/31/05 | 365 | $  49.38 | $  18,022.84 |
| | $  600,761.49 | 4.00% | 12/05/06 | 340 | $  65.84 | $  22,384.54 |
| $82,589.96 | $  683,351.45 | 4.00% | 12/6/2006 - 12/31/06 | 25 | $  74.89 | $  1,872.20 |
| | $  683,351.45 | 6.00% | 03/31/07 | 90 | $  112.33 | $  10,109.86 |
| $47,149.34 | $  730,500.79 | 6.00% | 4/1/2007 - 12/31/07 | 275 | $  120.08 | $  33,022.64 |
| | $  730,500.79 | 6.00% | 05/31/09 | 517 | $  120.08 | $  62,082.56 |
| | Totals | | | 2,484 | | $224,139.30 |

**Schedule B.2 Law Division Payoff as of 5/31/09**           11/14/2007



Banc of Amercia Leasing & Capital, LLC
Judgment Accounting Ledger
Quinn-Woodbine, Inc. - Loan No. QUI
Prepared by E. Wilson

*Law Division Judgment*

| $ | 885,613.31 | Original Judgment (1/15/2002) |
| | | (per order dated August 17, 2004 by Judge Visalli correcting clerical mistake in judgment) |
| | 494,843.18 | Current Principal Judgment Amount |
| | 203,461.58 | Plus Interest to 5/31/09 |
| | 247.69 | Plus Costs of Action |

$ **698,552.45**   **Total Payoff**

Judgment Interest Calculation

| (Payment) Advance | | Amount | Interest Rate | Date | Days | | Per Diem | | Accrued Interest |
|---|---|---|---|---|---|---|---|---|---|
| | $ | 885,613.31 | 8.00% | 2/2/2002 | 18 | $ | 194.11 | $ | 3,493.93 |
| $ (4,300.00) | $ | 881,313.31 | 8.00% | 2/3/02 - 2/28/02 | 26 | $ | 193.16 | $ | 5,022.28 |
| $ (38,700.00) | $ | 842,613.31 | 8.00% | 3/1/02 - 4/30/02 | 61 | $ | 184.68 | $ | 11,265.62 |
| $ (80,000.00) | $ | 762,613.31 | 8.00% | 5/1/02 - 5/15/02 | 15 | $ | 167.15 | $ | 2,507.22 |
| $ (20,532.99) | $ | 742,080.32 | 8.00% | 5/16/02 - 5/24/02 | 9 | $ | 162.65 | $ | 1,463.83 |
| $ (200,000.00) | $ | 542,080.32 | 8.00% | 5/25/02 - 6/3/02 | 10 | $ | 118.81 | $ | 1,188.12 |
| $ (70.48) | $ | 542,009.84 | 8.00% | 6/4/02 - 6/11/02 | 8 | $ | 118.80 | $ | 950.37 |
| $ (500.00) | $ | 541,509.84 | 8.00% | 6/12/02 - 12/31/02 | 203 | $ | 118.69 | $ | 24,093.48 |
| | $ | 541,509.84 | 5.00% | 12/31/2003 | 365 | $ | 74.18 | $ | 27,075.49 |
| | $ | 541,509.84 | 4.00% | 2/2/2004 | 33 | $ | 59.34 | $ | 1,958.34 |
| $ (46,666.66) | $ | 494,843.18 | 4.00% | 2/3/2004 - 12/31/04 | 333 | $ | 54.23 | $ | 18,058.39 |
| | $ | 494,843.18 | 3.00% | 12/31/2005 | 365 | $ | 40.67 | $ | 14,845.30 |
| | $ | 494,843.18 | 4.00% | 12/31/2006 | 365 | $ | 54.23 | $ | 19,793.73 |
| | $ | 494,843.18 | 6.00% | 12/31/2007 | 365 | $ | 81.34 | $ | 29,690.59 |
| | $ | 494,843.18 | 6.00% | 5/31/2009 | 517 | $ | 81.34 | $ | 42,054.89 |
| | | Totals | | | 2,693 | | | | $ 203,461.58 |