| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**GREGORY & REED**<br>*A Professional Corporation*<br>2 Sylvan Way, Suite 303<br>Parsippany, New Jersey 07054<br>(973) 898-1400<br>Attorneys for Creditor, Bank of America, N.A.<br>SJ9740 | |
|---|---|
| In Re:<br><br>Quinn-Woodbine Realty & Leasing, LLC,<br><br>                     Debtor. | Case No.: 08-33787<br><br>Adv. No.:<br><br>Hearing Date: February 9, 2009<br><br>Judge: JHW<br><br>Oral Argument Requested |

### BANK OF AMERICA'S REPLY TO DEBTOR'S OPPOSITION TO THE BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY.

#### PRELIMINARY STATEMENT

The pertinent facts are set forth in detail in the Bank's initial Brief in Support of its Motion for Stay Relief and the supporting Certification of Edward W. Wilson ("Wilson Certif."), previously submitted. Bank of America, N.A. (the "Bank") filed its motion for relief from the automatic stay to complete its foreclosure of Debtor's commercial real estate on the principal grounds that Quinn-Woodbine Realty & Leasing Co., LLC (the "Debtor") consented to stay relief in a global Settlement Agreement (the "Agreement") with the Bank, and the Debtor cannot provide an effective plan of reorganization because it is a single property real estate holding company. The Bank also demonstrated that it is highly doubtful there is any equity in the

1

Property. This Reply is in response to the Debtor's Brief in Opposition to the Bank's Stay Relief Motion.

## ARGUMENT

I. **THE DEBTOR, WHILE REPRESENTED BY COUNSEL, AGREED TO WAIVE THE AUTOMATIC STAY WHICH IS PATENTLY OBVIOUS IN TRANSCRIPTS OF PROCEEDINGS BEFORE THE STATE COURT AS WELL AS NUMEROUS CORRESPONDENCES AND SUBMISSIONS TO THE STATE COURT.**

Debtor was represented by legal counsel throughout the state court negotiations of the global Settlement Agreement in 2007 and consented numerous times to waiver of the automatic stay which was a material component to the Agreement. The Debtor's waiver of the automatic stay was a very important bargained for stipulation before the Bank would forbear and allow the Debtor up to a year and a half to sell the real estate and provide the Debtor up to a $225,000 discount off the amount due if Debtor met certain deadlines.

Debtor claims, incredibly, that the global Settlement Agreement was only "proposed" and that the parties did not in fact reach a binding Settlement Agreement, particularly regarding the Debtor's waiver of the automatic stay. However, State Court Judge Visalli entered the Settlement Agreement as an Order of the Court and Debtor never appealed. It is final and binding.

Counsel for Debtor first refers to its Exhibit A, the transcript from the hearing before Judge Visalli on June 11, 2007 when all parties (the Bank, the Debtor, the other Quinn parties, and auctioneer Daley Hodkin) placed the global settlement that we all had reached on the record (we attach to this Reply as Exhibit A the transcript because Debtor failed to attach it to its opposition papers). In that transcript, the attorney for the Quinn parties actually reads to the

2

Court the terms of the settlement which included that Debtor consents to lifting of the automatic stay. See Transcript, Exh. A hereto. Debtor's false claim is irrelevant anyway because, after the parties placed the settlement on the record, they reduced the agreement to a written settlement agreement and Judge Visalli, after a lengthy conference call with counsel for the Bank and Debtor's counsel to discuss the terms, signed an Order on November 20, 2007 entering the Agreement as an Order of the Court. See Order and Agreement, Exh. B to Wilson Certif.

At the beginning of that hearing on June 11, 2007, the Court understood that the parties had come to a settlement and requested that the terms be put on the record: "It's been reported that all issues in this case are resolved, subject to certain formalizations, and someone wants to place that on the record please?" Transcript, page 4, lines 3-6, Exh. A hereto. All attorneys present confirmed that a settlement had been reached and then Mr. Corrado, attorney for the Quinn Parties at the time, began to place the terms on the record: "Judge, the terms are as follows..." See Transcript pages 4-19, Exh. A hereto. The discussion regarding Debtor's waiver of the automatic stay begins at line 4, page 9 of the transcript:

| | |
|---|---|
| Mr. Corrado (Debtor's attorney): | ... The agreement's to provide that the QW, that the Quinns will in the – the Quinn defendant in the foreclosure action will consent to –<br>I'm sorry, Steve. This sentence doesn't make sense. |
| Mr. Reed (Bank's attorney): | ... To lift the bankruptcy stay. It says bank, to bank, lifting the stay, if it thought it should be the bank lifting the stay if he files bankruptcy in the future. |
| Mr. Corrado: | Oh, okay. So in other words, if there were a bankruptcy, and the Quinns did do a bankruptcy, and the bank moved to lift the stay, you wouldn't object to that. Is that – Is that correct? |

3

| | |
|---|---|
| Mr. Reed: | That's correct. They would agree that we could have a lift of the stay.<br><br>One of the Quinn Woodbine entities, Your Honor, has not filed bankruptcy. I don't – I'm not sure, but I don't believe you can have a corporate entity or an individual waive the right to, you know, waive the right to file bankruptcy. But I believe you can ask the client, the corporate client or individual, to agree ahead of time that there would be a lift of the bankruptcy stay to allow foreclosure to continue. |
| [Judge Visalli]: | But that entity really doesn't have title interest in the property, does it? |
| Mr. Schweller (Daley Hodkins' attorney): | No. Not right now. |
| [Judge Visalli]: | Let me – not a problem. |
| Mr. Schweller: | Thank you. |
| [Judge Visalli]: | All right. Go ahead. |
| Mr. Corrado: | The Quinns are requesting that the bank provide it with statements of any changes in the – they keep the Quinns informed of a running total of the loan amount over time as this goes forward... |

See page 9, lines 4-25 and page 10 lines 1-15, transcript Exh. A hereto.

As this transcript reveals, the Debtor's attorney, Mr. Corrado, was placing the settlement on the record when he asked the Bank's attorney, Mr. Reed, to clarify a sentence that Mr. Corrado was reading from his handwritten notes which listed the settlement terms. Counsel for the Bank then helped Mr. Corrado clarify what Mr. Corrado's notes said. Mr. Corrado then stated: "So in other words, if there were a bankruptcy, and the Quinns did do a bankruptcy, and the bank moved to lift the stay, [the Quinns] wouldn't object to that... Is that correct?" Lines 13-17, page 9 of transcript, Exh. A hereto. Mr. Reed said "That's correct" and explained it to the

4

Judge. The Debtor's attorney only sought to clarify that portion of the settlement agreement and did not argue against it. The Court then asked about an entity holding title in the property. It is unclear whether the Judge's question even related to the Debtor's consent to the lifting of the stay because the auctioneer's counsel responded to the Judge and that counsel had nothing to do with the waiver. Then the Court simply allowed Mr. Corrado to "[g]o ahead" with placing the settlement on the record. Transcript, page 10, line 10, Exh. A hereto.

After placing the settlement on the record on June 11, 2007, the parties engaged in lengthy negotiations between counsel for the Bank and Debtor's counsel over the terms of the draft settlement agreement. Counsel for the Bank eventually had to file a motion to enforce the Settlement Agreement in October 2007. On October 15, 2007, counsel for Debtor, Stephen Barry, submitted a letter in response to the Bank's motion (attached hereto as Exhibit B). Mr. Barry's letter recognized that "the parties agree[d] that they ha[d] reached a global settlement agreement as to all existing disputes among them..." See page 2, 1st full paragraph of Exh. B hereto. Regarding waiver of the automatic stay, Mr. Barry acknowledged that his clients agreed to waive the bankruptcy stay and he only objected to some of the additional bankruptcy language in the draft agreement about "bad faith" filing and dismissal of the bankruptcy case:

> The parties agreed... that if any of the Quinn entities went into bankruptcy they would not object to a motion on the part of the bank for relief from the stay of the sheriff's sale of the subject property. **They agreed to that on June 11, 2007...**
>
> What they did not agree to is that the bank would be entitled to a dismissal of the case, or to a finding that the bankruptcy would be filed in bad faith.
>
> Of course the Quinns don't want to file bankruptcy on behalf of themselves or any of their companies any more than anyone else does. None of us can predict the future, however, and **by consenting to a motion for relief from the stay,** [the Quinns] have done everything that can reasonably be asked of them in this regard...

5

See page 5, 1st and 3rd full paragraphs of Exh. B hereto. (emphasis added).

Mr. Barry's proposed form of order attached to his opposition letter actually contained the very same waiver that Debtor now argues it never agreed to:

> In the event that either of the Quinns personally or any of their entities file a bankruptcy, **this Order establishes the agreement of Michael Quinn and Marita Quinn on behalf of themselves and their legal entities that they will consent to and not oppose any application by the bank in a bankruptcy court for relief from the automatic stay with regard to the Woodbine property.**

See ¶ 14, Debtor's form of order, Exh. B hereto. (emphasis added).

It is amazing that the Debtor now argues that it never agreed to a waiver of the automatic stay when its own attorney drafted a proposed order containing the above-cited language. Although Judge Visalli did not use the Debtor's form of order, the fact that the Debtor's attorney included this language in a form of order on behalf of the Debtor is indisputable evidence of the Debtor's consent to waiver of the automatic stay.

Further, in Debtor's attorney's letter to Judge Visalli dated November 6, 2007 (attached hereto as Exhibit C), Debtor's attorney again poses objections to the Bank's form of Order but does not object to, or even mention, the Quinns' waiver of the automatic stay. Regarding Paragraph 16 of the settlement agreement, Mr. Barry objects only to the second sentence of paragraph 16 which read: "The Quinn Parties shall be deemed in default under this Agreement in the event any of the other Quinn Parties file bankruptcy." See Exh. C hereto and Agreement, Exh. B. to Wilson Certif. Mr. Barry's November 6, 2007 letter to the Court only objects to the filing of bankruptcy being considered a default under the agreement. His letter contains absolutely no objection to a waiver of the automatic stay.

As additional support that the Debtor consented to waiver of the automatic stay through its attorneys, the Bank submits a copy of a transcript from a telephone conference between Judge

6

Visalli, counsel for the Bank and counsel for the Quinns on November 8, 2007. See Exh. D hereto. In that transcript, Judge Visalli clarifies (beginning at line 8, page 38) that the language of waiving the automatic stay will be included in His Honor's Order in paragraph 3:

| | |
|---|---|
| Judge Visalli: | In the event Quinn-Woodbine my goal Quinn instead of filing for relief **those parties are each hereby deemed to waive any and all objections to any application bank is seeking... And, those parties are hereby deemed to have unconditional consent to lift any future automatic stay in the event any one of them seeks relief under the bankruptcy code.** |
| Mr. Barry:<br>(Quinns' attorney) | **I agree that your orders – Mr. Reed's Order how that you just read it accurately states what your Honor decided on October 31st** |
| Judge Visalli: | **Right.** |

See November 8, 2007 transcript at page 38, lines 8-20, Exh. D hereto. (emphasis added).

Later on in the November 8, 2007 transcript, the parties continue to discuss paragraph 16 of the settlement agreement but there is never any objection to waiver of the stay:

| | |
|---|---|
| Mr. Barry:<br>(Quinns' attorney) | The bank has two things and **I bargained for and it's entitled to.** One is a release of any and all claims in any nature the Quinn's and the lease may have against the bank. They're all subsumed in this agreement.<br>And, the other is that **they consented and your Honor, and the form of the order is not in dispute. They have consented to relief from any sale.** |

Id. at page 46, lines 20-25 and page 47, lines 1-2, Exh. D hereto (emphasis added).

Paragraph 16 of the Settlement Agreement as well as Paragraph 3 of the Order were dealt with by counsel for the parties and Judge Visalli at length on multiple occasions and not once did counsel for Debtor ever object to the waiver of the automatic stay. Any objections regarding paragraph 16 always centered on the issue of whether the filing of bankruptcy should be

7

considered a default under the Agreement. The record is clear and replete with the Debtor's agreement to waive the automatic stay. For the Debtor to argue otherwise is completely baseless.

## II. IN CORRESPONDENCE TO THE COURT, THE DEBTOR ITSELF, WHILE STILL REPRESENTED BY COUNSEL, ACKNOWLEDGED ITS AGREEMENT TO WAIVE THE STAY.

While still represented by counsel, the principals and owners of Debtor, on their own, wrote a letter to Judge Visalli in which they acknowledged their waiver of the automatic stay (attached as Exhibit E hereto). Michael Quinn and Marita Quinn wrote to Judge Visalli on November 8, 2007, requesting not that Judge Visalli deny the motion, but that the Judge rename the Order:

> First of all, we wish to point out to the Court that we did not file an opposition to the Bank's Motion to Enforce. We agree that negotiations had reached a point where both parties needed the help of the Court.
>
> For this reason, we respectfully request that the Court re-label the settlement order as something like, "Order to Enforce Settlement Agreement Against All Parties" or "Order to Finalize Settlement Agreement" rather than "Against" just us. We feel that an order "Against" us would not be a fair outcome to us.

See Quinn letter, Exh. E hereto.

In the above-cited letter, the Quinns acknowledged that the parties had indeed reached a settlement agreement and they simply preferred that the Order not be labeled as enforced "against" them. Nowhere in that letter or anywhere in the record did the Quinns object to waiver of the stay. By requesting that the Order be called "something like,... 'Order to Finalize Settlement Agreement,'" the Quinns acknowledged that an Order granting the Bank's motion to enforce was an order finalizing the written Settlement Agreement which contained clauses, such

8

as the waiver of the stay, that they agreed with. The Quinns never filed a motion for reconsideration of that Order nor did they ever appeal it.

### III. THE SETTLEMENT AGREEMENT IS VALID AND ENFORCEABLE WITHOUT THE NEED FOR SIGNATURES.

Counsel for Debtor argues that the "proposed settlement document… was never agreed to or executed by Debtor…" and "… the trial judge did not review the record." (see page 3 of Debtor's opposition). These statements are totally false. Judge Visalli personally handled the State Court litigation for years. His Honor conducted several settlement conferences with counsel and conducted the hearing when the parties happily reported that they reached a global settlement agreement. In fact, His Honor conducted at least one conference call with counsel to review almost every word in the written settlement agreement. See transcript of November 8, 2007, Exh. D hereto. The Bank's motion to enforce the agreement attached a draft agreement and set forth the items that the parties needed the Court to address. His Honor then entered an Order approving the Settlement Agreement. Judge Visalli's Order supplemented Paragraph 16 of the Settlement Agreement with Paragraph 3 of his Order and states:

> In the event that Quinn Woodbine Realty & Leasing Co., Michael Quinn and/or Marita Quinn seek relief under the Bankruptcy Code, **those parties are each hereby deemed to waive any and all objections to any application of the Bank to seek relief from the automatic stay under Section 362 of the Bankruptcy Code, and those parties are hereby deemed to have unconditionally consented to lift any future automatic stay in the event any one of them seeks relief under the Bankruptcy Code.**

Order ¶ 3 Exh. B to Wilson Certif. (emphasis added).

The Debtor knowingly and voluntarily waived "any and all objections to any application of the Bank to seek relief from the automatic stay."

9

Debtor makes the ridiculous statement that it is not bound by the Settlement Agreement, because the Settlement Agreement "is not signed." However, Judge Visalli's Order disposes of the need for signatures on the Settlement Agreement at the top of page 2 of his Order:

> ORDERED that the "SETTLEMENT AGREEMENT" submitted to the Court on October 18, 2007 and marked as P-1 into evidence by the Court on October 31, 2007, and which is attached as Exhibit A to this Order (the "Settlement Agreement") is hereby **binding and enforceable against all ten parties listed as signatories in the attached Settlement Agreement *without* the need for any signatory to sign the Agreement**...

See Order and Agreement, Exh. B. to Wilson Certif. (emphasis added).

The Debtor's challenge of the Settlement Agreement based on a lack of signatures is wholly without merit. They never appealed the Order.

## IV. CASE LAW SUPPORTS A LIFT OF THE AUTOMATIC STAY.

The Third Circuit case cited by Debtor does not address prepetition waivers of the automatic stay. Constitution v. Tubbs, 68 F.3d 685 (3d Cir.1995). Debtor cites the Third Circuit's position regarding the *purpose* of the automatic stay as if the Court is not aware of its purpose. Every bankruptcy court and practitioner in this country understands the fundamental purposes of the automatic stay. The issue is the enforceability of the Debtor's prepetition waiver of the automatic stay in a prepetition agreement, an issue that the Third Circuit has apparently not yet ruled upon directly.

Tubbs stated that "[t]he automatic stay cannot be waived," to mean that "[r]elief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case." Constitution v. Tubbs, 68 F.3d at 691. All the Tubbs Court says regarding waiver of the stay is that even if there is a waiver in place, it is not effective unless the party seeking to avail itself of

the waiver, makes proper application for relief from the stay before the appropriate bankruptcy court. **The Tubbs case says nothing regarding the enforceability of prepetition waivers of the automatic stay.** The case simply explains that a party seeking relief from the stay must file a motion for relief and that is exactly what the Bank is doing in this case. After all, "[o]nce a stay is in effect, without relief from the bankruptcy court, 'the parties themselves [can]not validly undertake any judicial action material to the claim against' the debtor… This includes the filing of motions, which are void *ab initio*, unless the bankruptcy court later grants retroactive relief." Id. (citing Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1207 (3d Cir. 1991)).

Therefore, the Bank is fully compliant with the Third Circuit's ruling that a waiver of a bankruptcy stay is not self-executing but is only effective if relief from stay is applied for and granted by the bankruptcy court.

Although Debtor attempts to argue that prepetition waivers are per se unenforceable in the Third Circuit, Debtor cites no legal authority holding to that effect. Further, in Debtor's footnote 2, regarding In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008), Debtor makes much of the Court's mention of "prior bankruptcy proceedings." In that case, however, the Debtor entered a forbearance agreement with a creditor who had already scheduled a court-approved foreclosure sale of the Debtor's property. In re Bryan Road, LLC, 382 B.R. 844 at 848. The foreclosure court approved the forbearance agreement which contained a prepetition waiver of the stay. Id. The court held that the forbearance agreement, entered into on the eve of foreclosure and containing a prepetition waiver of the stay constituted cause to lift the stay. Id. at 854. The court also found that the "Debtor's case was expressly filed for the purpose of delaying the sale" because after entering the forbearance agreement wherein the creditor agreed to forbear on the sale and the sale was rescheduled, Debtor still filed for Chapter 11 the day before the

11

Case 08-33787-JHW    Doc 25    Filed 02/05/09    Entered 02/05/09 18:56:00    Desc Main
Document    Page 12 of 14

rescheduled foreclosure sale. Id. at 848. Most importantly, "the existence of a prior confirmed reorganization plan is not a condition precedent to the enforceability of a stay relief agreement." Id. It follows, then, that here, even though the Debtor's prepetition waiver was not obtained in the context of a preapproved plan, the prepetition waiver of stay is still enforceable.

As we previously explained, courts that have dealt with the issue often use a multi-factor test. A review of the facts in this case can only lead to the conclusion that there is sufficient cause to lift the automatic stay. The multi-factor test of In re Desai, 282 B.R. 527 (Bankr. M.D. Ga. 2002) consists of the following factors "(1) the sophistication of the party making the waiver; (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers; (3) whether other parties are affected including unsecured creditors and junior lienholders, and; (4) the feasibility of the debtor's plan." In re Desai, 282 B.R. at 532. An application of the Desai factors to the case at bar would result in enforcement of the Debtor's prepetition waiver of the automatic stay.

As established in our initial brief, the Debtor had the benefit of the assistance of counsel and the waiver was bargained for in exchange for the substantial benefits it received under the Settlement Agreement (i.e. the Bank gave the Quinns the potential for a $225,000 discount and a year and a half to sell the real estate if the Quinns were able to meet certain terms of the Agreement). See Agreement, Exh. B to Wilson Certif.

Further, no party or other creditor can reasonably claim to be adversely affected by the lifting of the stay. Only one other creditor has objected to the Bank's motion, the law firm of Alpert Butler & Weiss, P.C., which obtained two judgments totaling approximately $165,000 against Debtor for Debtor's failure to pay legal fees, just like Debtor did to its other creditor, Flaster/Greenberg, which obtained a $142,000 judgment. In any event, without any legal support

12

or factual basis, creditor Alpert Butler & Weiss, P.C. simply asks this Court not to force sale of the real estate given the poor real estate market. The law firm of Alpert Butler & Weiss is apparently a secured creditor since it levied on Debtor's property and Flaster/Greenberg apparently has a judgment lien on the Property. There are virtually no unsecured creditors for this Court to protect.

Debtor also cannot reorganize because it is a single asset real estate holding company and Debtor's petition essentially shows that there is no equity in the Property. Pet. Exh. A, Wilson Certif. Debtor submitted a 2005 appraisal – the height of the real estate market – which estimates a value of $2.4 million, but Debtor has failed to submit any updated appraisal, surely knowing that the current appraised value of the vacant and vandalized building and land in this severely depressed market may be worth only half of $2.4 million, or less. The Petition shows secured claims in the amount of $1,114,996.14 and unsecured claims in the amount of $305,807.44 totaling $1,420,803.58. See Pet. Exh. A, Wilson Certif. The Bank provided an equity analysis chart in its initial brief based on the Bank's September 2004 appraisal of $1,340,000. $1,340,000 less estimate of 10% costs of sale = 1,206,000, which when compared to claims of $1,460,803.58 means that claims exceed equity by about $254,000.

The Bank should therefore be permitted to complete its foreclosure of Debtor's commercial real estate on the grounds that the Debtor consented to stay relief in a global Settlement Agreement and the Debtor cannot provide an effective plan of reorganization because it is a single property real estate holding company. We cited several cases in our initial brief indicating that a Chapter 11 filing is inappropriate for the purpose of only liquidating a single asset.

## Conclusion

Based on the foregoing, the Bank respectfully requests that the Bankruptcy Court grant it relief from the automatic stay.

Respectfully submitted,

/s/ *Steven J. Reed*

Steven J. Reed

February 5, 2009