# EXHIBIT A

# TRANSCRIPT OF JUNE 11, 2007 COURT PROCEEDINGS

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CAPE MAY COUNTY
DOCKET NO. CPC-L-605-01
APP. DIV. NO.

BANC OF AMERICA,                    :            TRANSCRIPT

        Plaintiff,                 :                OF

  vs.                               :

QUINN WOODBINE, et al,              :            SETTLEMENT

        Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - -

               Place:  Cape May County Courthouse
                      4 Moore Rd.
                      Cape May County, NJ

              Date:  June 11, 2007

B E F O R E:

  HONORABLE JOSEPH C. VISALLI, J.S.C.

TRANSCRIPT ORDERED BY:

  BARRY, CORRADO, GRASSI & GIBSON (Frank Corrado, Esq)

A P P E A R A N C E S:

    GREGORY & REED,
    BY:  STEVEN REED, ESQ.,
    Attorney for the Plaintiff.

    BARRY, CORRADO, GRASSI, & GIBSON,
    BY:  FRANK CORRADO, ESQ.,
    Attorney for the Defendants.

    LEWIS SCHWELLER, ESQ.,
    Attorney for the Intervenor .

                        Sound Recorded by:  N/A
****************************************************
              Michele Vigaro, AD/T 352
                 4 Elodie Lane
            Randolph, New Jersey 07869
       (973) 328-1730  FAX (973) 328-8016
****************************************************

2

```
 1
 2                         I N D E X
 3                         08/14/07
 4                                                 Page
 5
 6
 7   SETTLEMENT ON RECORD
 8        By Mr  Reed                              4,13
 9        By Mr. Corrado                            7
10        By Mr. Schweller                         15
11
12
```

Colloquy                                     3

1              (Proceedings commence at 11:54 a.m.)

2              THE COURT:  Please be seated.

3              Counsel, please enter your appearances

4      and the parties, of course, that you're representing.

5              MR. REED:  Good morning, Judge.  It's a

6      couple minutes after noon.  I'm Steve Reed on behalf

7      of the plaintiff, Banc of America.

8              MR. SCHWELLER:  Lewis Schweller, Your

9      Honor, on behalf of Intervenor, Daley Hocken

10     (phonetic) Corporation.

11             MR. CORRADO:  Your Honor, Frank Corrado

12     on behalf of the defendant, Quinn Woodbine, the --

13     and the other defendant.

14             THE COURT:  And the individuals as well,

15     right?

16             MR. CORRADO:  Yes.  Correct.

17             THE COURT:  All right.  I understand that

18     you --

19             MR. CORRADO:  Your Honor, with me at

20     counsel table is Mrs. Marietta Quinn, who is the

21     husband -- or excuse me -- the wife of Michael Quinn,

22     and who could not be here today because of a very

23     serious arthritis problem that makes him difficult

24     for him to walk.

25             Mrs. Quinn is a authorized to speak on

Colloquy                                          4

1   behalf of her husband today, and she is also

2   authorized to speak on behalf of the corporation.

3            THE COURT:  All right.  It's been

4   reported that all issues in this case are resolved,

5   subject to certain formalizations, and someone wants

6   to place that on the record please?

7            MR. CORRADO:  That's correct, Judge.

8            MR. REED:  Yes, Judge.  Again Steve Reed

9   on behalf of the Banc.

10           The parties have spent the last several

11  hours this morning, Judge, discussing settlement, and

12  we've to an agreement, a verbal agreement between all

13  three parties.

14           The agreement is agreeable and acceptable

15  to my client, Ed Wilson, who's here today.  The only

16  contingency he has is he needs to write up the

17  settlement terms at his office tomorrow and then

18  present those to the other supervisors at his office

19  to get final approval.

20           He has recommended it, though, and has

21  discussed this settlement with the people back at his

22  office in Providence, Rhode Island.  And he hopes and

23  expects that the settlement would be approved.

24           So that is -- there is that one

25  contingency, but subject to that, Judge, we have -- I

Colloquy                                          5

1   had written a term sheet letter actually to Mr.

2   Corrado back in March, and the terms of that

3   letter which go on for a few pages, and if Your Honor

4   just doesn't mind it if I just those pages on the

5   record --

6              THE COURT:  No, that's fine.

7              MR. REED:  -- and, you know, maybe I'll

8   try to abbreviate it a little bit.  Put those terms

9   on the record, and they are the basic terms of the

10  settlement between all three parties, essentially, at

11  the sum of between us and --

12             MR. CORRADO:  I think I can go through

13  that in terms of --

14             MR. REED:  Oh, you want to do that?

15             THE COURT:  Is it really necessary to do

16  that or just mark that as evidence?

17             MR. CORRADO:  Well, because it contains

18  terms that aren't in the settlement, I'd prefer that

19  we sort of summarize it to Your Honor.

20             THE COURT:  All right.

21             MR. CORRADO:  And then have it reduced to

22  writing.

23             THE COURT:  Okay.

24             MR. REED:  And it is subject to a written

25  agreement that we expect the parties to enter into.

Colloquy                              6

1   This is just the term sheet.

2             And so the settlement today, Judge, would

3   be contingent also upon the parties agreeing to

4   terms, and they may have additional -- there might be

5   some additional terms, I'm sure there will be, some

6   various other terms.

7             MR. CORRADO:  Judge, the terms are as

8   follows:

9             The Quinn entities, meaning Quinn

10  Woodbine Realty & Leasing Company and Michael

11  Quinn, will agree to the calculations of Chancery

12  judgment balances, and will not challenge those in

13  court.

14            The settlement amount, which I will get

15  to in a minute, will be increased to the extent the

16  bank has to make any payment for real estate taxes or

17  liens on the property that is the subject of the

18  foreclosure judgment here.  It's a bindery property

19  in Woodbine.

20            And the settlement anticipates the Quinns

21  making those payments; but it should be possible --

22  should it happen during this settlement period that

23  the bank has to make those payments, then the Quinns

24  recognize that they will be -- they will have to

25  reimburse the bank for those payments.

Colloquy                                7

1        The Sheriff fee's payable at the closing,

2   and the contemplated settlement would be -- sheriff

3   fees that would otherwise be payment on the

4   foreclosure sale would be split 50/50 by the Quinns

5   and the bank.

6        The bank will credit or reduce the

7   judgment, Chancery Division judgment and the Law

8   Division judgment, by the sum of two hundred thousand

9   dollars.  If such amount -- if the reduced judgment

10  amount is paid off as a -- this says, "as been set

11  forth below" -- the settlement payment, the releases,

12  and other provisions of the stipulation agreement

13  would settle and resolve both judgments in both

14  cases.

15       The bank will accept the settlement

16  amount to satisfy the judgment, provided the real

17  estate is under a bona fide contract of sale no later

18  than twelve months from the agreement date.

19            In addition, the bank will allow an

20  additional six months for  settlement after that.  So

21  it's a total of eighteen months.

22       The bank will accept the settlement

23  amount minus an additional twenty-five thousand

24  dollars to satisfy the judgment, up to six months

25  from the effective date of the stipulation and

Colloquy                                8

1    settlement agreement that we're reaching here

2    today.

3              Whether or not the real estate is subject

4    to a bona fide contract for sale -- in other words,

5    if the property -- if the loan is paid off or the

6    property is sold within six months, in addition to

7    the 200,000-dollar credit that we're -- the bank is

8    extending, they will extend an additional $25,000

9    credit.

10             Mr. Quinn will provide copies of any

11   written offers to the bank and copies of any

12   contracts, et cetera.

13             And the real estate closing will the bank

14   settlement amount on the closing statement.

15             If the settlement amount is not paid,

16   then the bank shall be entitled to recover the full

17   Chancery judgment amount, as it may be the subject,

18   when we calculated or amended from the property, by

19   an uncontested foreclosure and sheriff's sale.

20             The bank will provide an Environment

21   Phase I and II reports without charge to the Quinns.

22   The Quinns will sign a form of indemnification and

23   disclosure/nondisclosure pertaining to the use of

24   those accounts or those reports.

25             And that there will be mutual releases

Colloquy                                    9

1    among all parties.  The Quinn releases will be

2    effective immediately at the time of the signing, and

3    the bank's will be effective upon the payoff.

4             The agreement's to provide that the QW,

5    that the Quinns will in the -- the Quinn defendant in

6    the foreclosure action will consent to --

7             I'm sorry, Steve.  This sentence doesn't

8    make sense.

9             MR. REED:  Yeah.  To lift the bankruptcy

10   stay.  It says bank, to bank, lifting the stay, if it

11   thought it should be the bank lifting the stay if he

12   files bankruptcy in the future.

13            MR. CORRADO:  Oh, okay.  So in other

14   words, if there were a bankruptcy, and the Quinns did

15   do a bankruptcy, and the bank moved to lift the stay,

16   you wouldn't object to that.  Is that -- Is that

17   correct?

18            MR. REED:  That's correct.  They would

19   agree that we could have a lift of the stay.

20            One of the Quinn Woodbine entities, Your

21   Honor, has not filed bankruptcy.  I don't -- I'm not

22   sure, but I don't believe you can have a corporate

23   entitle or an individual waive the right to, you

24   know, waive the right to file bankruptcy.  But I

25   believe you can ask the client, the corporate client

Colloquy                           10

1   or individual, to agree ahead of time that there

2   would be a lift of the bankruptcy stay to allow

3   foreclosure to continue.

4               THE COURT:  But that entity really

5   doesn't have title interest in the property, does

6   it?

7               MR. SCHWELLER:  No.  Not right now.

8               THE COURT:  Let me -- not a problem.

9               MR. SCHWELLER:  Thank you.

10              THE COURT:  All right.  Go ahead.

11              MR. CORRADO:  The Quinns are requesting

12  that the bank provide it with statements of any

13  changes in the -- they keep the Quinns informed of a

14  running total of the loan amount over time as this

15  goes forward.

16              THE COURT:  On -- how frequently?

17  Monthly, quarterly, or what?

18              MR. CORRADO:  Monthly would be fine.

19              MR. REED:  Monthly running totals?

20              MR. CORRADO:  Yeah.

21              MR. REED:  With the interest, just the

22  payoffs?

23              MR. CORRADO:  Uh-huh.  Yeah, so they know

24  what the amounts are.

25              MR. REED:  Is that acceptable?

Colloquy                                        11

1          (Mr. Reed speaking to unidentified

2    person)

3              MR. REED:  Yes, that should be fine,

4    Judge.

5              Upon request?  You'll request it?  I just

6    want the reports --

7              MR. CORRADO:  If they would come monthly,

8    that would be the ideal -- so they'd know how to do

9    it.

10             MR. REED:  All right.  But that wouldn't

11   mean we took a breach of the agreement, and that --

12   one that wasn't sent out.  Some.  I mean, obviously.

13             MR. CORRADO:  Okay.

14             THE COURT:  If you don't get it, you

15   call.

16             MR. CORRADO:  Yes.

17             THE COURT:  Maybe it's an oversight or

18   something.

19             MR. CORRADO:  Sure.

20             THE COURT:  And there might have to be

21   something that's done manual.  Who knows?

22             MR. REED:  Right.

23             MR. CORRADO:  I'm sorry, Judge.  I need

24   to ask Mr. Reed something.

25             (Counsel speak off the record)

Colloquy                          12

1        MR. CORRADO:  And finally, Judge, if

2   there's any further litigation, there will be a

3   prevailing party stipulation with respect to the

4   terms of the agreement.

5        THE COURT:  All right.  Now you have

6   something to place on regarding --

7        MR. CORRADO:  Also -- I mean, this

8   settlement, this term sheet indicates that the

9   Daily -- that this settlement is contingent upon

10  a settlement between the Bank and Daley Hocken,

11  Judge, which I suppose we put on the record right

12  now.

13       THE COURT:  All right.  The settlement

14  you've articulated so far is a settlement of the

15  entirety, insofar as your clients are concerned.  The

16  Law Division and the Chancery Division, correct?

17       MR. CORRADO:  That's correct, Your Honor.

18       THE COURT:  And do you have the docket

19  number so -- I don't know the -- do you have that up

20  there as well, the Chancery amount?

21       You want to include that in there?

22       Give us the docket number of that

23  Chancery matter.

24       MR. CORRADO:  The docket number of the

25  Law Division is 605-01, the docket number of the

Colloquy                              13

1   Chancery Division action -- Your Honor, I'm afraid I

2   don't have it.

3                  (All attorneys speaking simultaneously)

4                  MR. REED:  I have it in my box.

5                  MR. CORRADO:  It's in one of these boxes

6   somewhere.

7                  THE COURT:  Well, I think it's important

8   that we note that.

9                  (Court speaking to Clerk)

10                  THE COURT:  No, I have that.  Find it

11  later

12                  (Counsel confer off the record)

13                  MR. REED:  The Chancery Division docket

14  number is CPM-F-16397-01.

15                  THE COURT:  16397-01?

16                  MR. REED:  That's correct.

17                  THE COURT:  Okay.

18                  MR. REED:  Now the only thing I'd add to

19  Mr. Corrado's recitation of the settlement is that

20  the also -- the Law Division judgment will remain

21  active and viable, of course pending the default and

22  quick settlement; that is, the payment of the bank of

23  the settlement amount.

24                  THE COURT:  In essence, both judgments

25  remain.

Colloquy                                14

1          MR. REED:  That's right.

2          MR. SCHWELLER:  Yes.

3          THE COURT:  And the bank is agreeing to

4  forestall or --

5          MR. REED:  That's right.

6          THE COURT:  -- not proceed with any

7  further execution during the relevant time period,

8  subject --

9          MR. CORRADO:  And to --

10          THE COURT:  -- subject to all the

11  conditions of the agreement, and that would include

12  any activity out of state.  I don't know that that

13  there is any.

14          MR. REED:  That is correct, Judge.

15          MR. CORRADO:  Correct, Judge.

16          MR. REED:  That's correct.  Everything

17  will be, we would say stayed or --

18          THE COURT:  Oh, you mean a stay subject

19  to --

20          MR. REED:  -- settled for --

21          THE COURT:  -- the settlement --

22          MR. REED:  -- for the year and a half

23  while they comply with the agreement, just to sell

24  the property or to raise funds to pay off this other

25  amount.

                              Colloquy              .              15

1              And if they don't comply with the

2       agreement, then the bank has its uncontested

3       foreclosure action; it can go against the property

4       and/or --

5              THE COURT:  But in the meantime,

6       everything stays as is.

7              MR. REED:  That's correct.

8              MR. CORRADO:  That's correct.

9              THE COURT:  Whether it's here or

10      elsewhere.

11              MR. REED:  That's exactly right, Judge.

12              THE COURT:  Okay.

13              MR. REED:  But we'd also, outside the Law

14      Division judgment, in the event that to make one

15      exercise its rights under the Law Division judgment

16      as well.

17              THE COURT:  All right.  Now you have

18      something to supplement --

19              MR. SCHWELLER:  I sure do.

20              THE COURT:  -- regarding yourself --

21              MR. SCHWELLER:  Just one other thought,

22      Judge, on the environmental reports is that any

23      disclosure of the environmental reports to the

24      Quinns, they would either -- the Quinns to sign off

25      on the Bank's form of disclosure notice for turning

Colloquy                                        16

1    over environmental reports.

2                    MR. CORRADO:  I think I mentioned that.

3                    MR. SCHWELLER:  Did you mention it?

4                    MR. CORRADO:  Yeah.

5                    MR. SCHWELLER:  I apblogize.  I didn't

6    hear it.

7                    And the settlement, Judge, that we've

8    reached with the Daley Hocken Company is fairly

9    simple.

10                    As Your Honor knows, there's indemn --

11    cross-indemnification provisions, which mean the Banc

12    of America and Daley Hocken would resolve those in

13    this lawsuit.

14                    And the bank is willing to pay the total

15    amount to be replaced in escrow, in a sense be paid

16    to Daley Hocken, but be placed in escrow, with the

17    Court, the amount of $125,000.

18                    In exchange, the parties, all three

19    parties, of course, would exchange releases, and the

20    Daley Hocken individuals at the company would also

21    provide releases to the bank, individual releases, as

22    well as the two Daley Hocken Corporations would

23    provide releases to the bank, immediately upon

24    signing the agreement.  The bank will provide Daley

25    Hocken, the corporations, with releases.

Colloquy                        17

1       And I had mentioned to Mr. Schweller,

2   Daley Hocken's lawyer, that I would endeavor to

3   request from the bank, would the bank would be able

4   to provide reciprocal releases to the individuals

5   from Dalay Hocken.

6       We're getting the bank releases, and I

7   will make that request, but I doubt that it will be

8   granted but I will make the request; and if it is

9   granted, I'd be more than happy to provide those from

10  the bank to Daley -- to the individuals at Daley

11  Hocken.

12      The money would be -- the monies,

13  $125,000 that the bank would be paying to Daley

14  Hocken would be deposited with the Court, the Trust

15  Fund Unit of the Court, through a procedure, perhaps

16  most likely through the interpleader for the --

17  procedure.

18      And that procedure would require, I

19  believe, filing a complaint interpleader naming the

20  parties-in-interest as defendants.  And the parties-

21  in-interest in that -- in this case would be Daley

22  Hocken and also the law firm of Sullivan Manrow

23  (phonetic) in New York, Daley Hocken's prior counsel,

24  which has asserted an attorney lien against any funds

23  that might be paid to Daley Hocken in the amount of a

Colloquy                              18

1    hundred and four -- up to a hundred and four thousand

2    dollars.

3           So we are still -- Mr. Schweller and I

4    are still discussing the details as to how we would

5    interplead the money, but the money would have to be,

6    and it's the bank's requirement; it's been agreed to

7    by Daley Hocken, would have to be interpleaded with

8    the Court, so that the bank can make sure that it is

9    extricated from any additional litigation with regard

10   to that payment.

11          THE COURT:  All right.  Anything else,

12   sir?

13          MR. CORRADO:  No.  I just want to add

14   that that correctly reflects the agreement between

15   the bank and Daley Hocken, Your Honor.

16          THE COURT:  Thank you.

17          Anything further, sir, from you or your

18   client?

19          MR. REED:  No, Your Honor.

20          THE COURT:  All right.  I'll await the

21   final closing documents and the, whatever orders are

22   required.

23          Is there anything else that counsel --

24   the matter's accepted and the Court is -- both cases

25   are marked as settled subject to the filing of the

Colloquy                                    19

1    documents.

2                I thank all three of you and the clients

3    for your I'm sure hard work in coming to this

4    conclusion after a very long period of time here.

5    It's probably the benefit to everyone that it is --

6    it has been done in that fashion.

7                All right.  Anything else then, Counsel?

8    If not, then thank you all very much.

9                ALL COUNSEL:  Thank you, Your Honor.

10                (Proceedings concluded at 12:12 p.m.)

Colloquy                                    20

1          I, MICHELE VICARO, the assigned transcriber,

2     do hereby certify that the foregoing transcript of

3     proceedings in the Cape May County' on August 14,

4     2007 Video, 1154-1212, prepared in full compliancE

5     with the current Transcription Format for Judicial

6     Proceedings and is a true and accurate non-compressed

7     transcript of the proceedings to the best of my

8     knowledge and ability.

9

10    Date:
11    CASE #:                          Michele Vicaro, AD/T 352
12
13
14