# EXHIBIT D

# TRANSCRIPT OF NOVEMBER 8, 2007
# TELEPHONE CONFERENCE

1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CIVIL PART
CAPE MAY COUNTY, NEW JERSEY
DOCKET NO. L-605-01

BANC OF AMERICA LEASING &amp;    :
CAPITAL, LLC.                 :
                Plaintiffs,   :        TRANSCRIPT
      vs.                     :            OF
                              :   TELEPHONE CONFERENCE
QUINN-WOODBINE,               :
                              :
                Defendants.   :


PLACE: CAPE MAY COUNTY COURTHOUSE
       9 NORTH MAIN STREET
       CAPE MAY COURTHOUSE, 08210

DATE:  November 8, 2007

BEFORE:

   HON. JOSEPH C. VISALLI, J.S.C.

TRANSCRIPT ORDERED BY:

   STEVEN J. REED, ESQ. (Gregory &amp; Reed)


APPEARANCES:

   STEVEN REED, ESQ.
   Attorney for the Plaintiff

   STEPHEN BARRY, ESQ.
   Attorney for the Defendant


Charlotte Barone
Certified Court Transcriber
364 Colonial Drive
Toms River, New Jersey 08753
(732)-341-2108
VIDEO RECORDING
RECORDED BY:  Tricia Canning

Colloquy                                        2

```
 1              P R O C E E D I N G S
 2              (Transcribers note:  The telephone
 3    conversations at times was hard to hear and made
 4    transcribing difficult.)
 5              THE COURT:  All right, now, with respect to
 6    this case which is L-605-01, I'd like counsel to place
 7    their appearances on the record.
 8              Banc of America is who?
 9              MR. REED:  Steven Reed.
10              THE COURT:  And, the defendants other than
11    the intervener is represented, or are represented by?
12              MR. BARRY:  Stephen Barry.
13              THE COURT:  And, Daly Hopkin has chosen not
14    to participate that they have no interest in these
15    particular proceedings.
16              MR. BARRY:  These disputes don't affect them.
17              THE COURT:  That's correct.
18              Based upon the last couple of days in the
19    past couple of days in submissions coming out of the
20    October 31st hearing at which I addressed many of the
21    issues with the agreement that I'm going to go over
22    again, it was decided that this Court would enter an
23    order enforcing the settlement and not requiring
24    individual signatures but by virtue of the Court's
25    order having binding upon both parties.  As this
```

Colloquy                                        3

```
 1    Court's review and interpretation of the settlement
 2    based on all of the submissions of the parties.  Both
 3    in writing -- writing at the various conferences that
 4    we have had.
 5              To begin with in my process this morning of
 6    going through the documents a thought came to mind that
 7    the order requiring a vacating of the stay of the
 8    sheriff's sale which is, indeed, appropriate and called
 9    for in the agreement.  And, I don't think there's any
10    dispute as to that.
11              It's not per say clearly reflected that the
12    stay is vacated subject to the agreement in the Law
13    Division case.
14              MR. BARRY:  That's us.
15              THE COURT:  But, isn't that the basis for
16    this order being vacated?
17              MR. REED:  That's exactly correct, Judge.
18              THE COURT:  So, I'm going to add some
19    language in here that the stay of the sheriff's sale is
20    subject to the agreement which is attached as an
21    exhibit to the Law Division order.
22              MR. REED:  That's fine, Judge.
23              THE COURT:  Does that --  Okay.
24              MR. BARRY:  There's no argument about that.
25              THE COURT:  All right.
```

Colloquy                                              4

```
 1              And, further that this -- it's my feeling
 2      that the plaintiffs may not order a sale or order the
 3      sheriff, or request the -- the sheriff to proceed with
 4      the sale without some certification by plaintiff to the
 5      effect of a default or that the time -- and/or the time
 6      for the agreement to have been completed has passed.
 7              Do you understand what I'm saying?
 8              MR. BARRY:  Yes sir.
 9              MR. REED:  Yes, your Honor.
10              THE COURT:  With a copy of that going to --
11      that should be filed but addressed to the sheriff
12      saying proceed with the sale and certifying that
13      there's been a default -- of the defaulting agreement
14      or the time requiring performance by the defendant has
15      passed.  That that be sent to the sheriff and copied to
16      defendant's attorney.
17              So, I will hand write language into that
18      order providing I don't hear any objection now
19      encompassing those things.
20              MR. BARRY:  I have none, your Honor.
21              MR. REED:  That's fine, Judge.
22              THE COURT:  Okay.
23              Now, the next thing we go to is the
24      agreement.  And, I'm going to address Mr. Barry's
25      letter.  I'm looking at his letter of November 6 and
```

Colloquy                                              5

```
 1      I'm also looking at P-1 which is the agreement that was
 2      the subject of the -- the written agreement which was
 3      the subject of the October 31st conference.  And, I
 4      believe that this is the agreement to which Mr. Barry's
 5      comments have been raised.
 6              MR. BARRY:  Yes sir.
 7              THE COURT:  Okay.
 8              Paragraph -- Page 2, paragraph 1 of the
 9      agreement.  My -- my question here, I don't that this
10      is -- this is about the computations and subject to the
11      revisions by according to the schedules that are either
12      going to be approved as is or further revised.
13              MR. BARRY:  And, to some degree I'm raising a
14      semantic dispute about the way in which the language is
15      raised.
16              THE COURT:  You'll have to say that --
17              MR. BARRY:  Our folks asked me to object to
18      the language which is not in your -- it's an agreement
19      to the fact that they won't later dispute "in any
20      manner whatsoever", or otherwise.
21              THE COURT:  All right, I'll address that.  My
22      problem is beyond that -- is before that.  When you're
23      talking in the agreement paragraph 1 about Chancery
24      Division Law Division, dates and time, they don't
25      correspond to the schedules.
```

Colloquy                                                    6

```
 1              MR. BARRY:  Right.
 2              Oh, that's right, so the order --
 3              MR. REED:  Judge, can I address that to
 4   Steve Reed.  An order does -- my form of order does
 5   specifically address that situation at in or about the
 6   form of the order at the schedule, the revised
 7   schedules that I submitted would be replaced --- that
 8   would be replaced and supercede the stated amount and
 9   the stated date as set forth in paragraphs 1, 4 and 5
10   of the settlement agreement.  Actually those numbers
11   appear a few other times, Judge, in some other
12   paragraphs.  Paragraphs 4 and 5 of the settlement
13   agreement.  So, I've taken that into account by the
14   form of the order.
15              MR. BARRY:  I agree, logistically the form of
16   order does deal with this issue.
17              THE COURT:  Well, that's -- that's what I
18   think we intended but I -- I guess I didn't put the two
19   together.
20              MR. BARRY:  Yeah, you know, I think Mr.
21   Reed's order does solve the numbers problem in words.
22   Obviously there's a dispute about what the numbers
23   should be.  But, that's a separate issue.
24              THE COURT:  But, that's going to reviewed and
25   finalized once we see what your letter is and his
```

Colloquy                                                    7

```
 1   response to the schedules.  Am I correct?
 2              MR. BARRY:  Yes sir.
 3              MR. REED:  Yes Judge.
 4              And, your Honor, I would just make note with
 5   respect to Mr. Barry's letter dated November 6.  The
 6   objections are all of them go right to the terms of the
 7   settlement agreement and --
 8              MR. BARRY:  Not the order.
 9              MR. REED:  That's right.  Not to the -- to
10   the form of order and your Honor has already ruled on
11   October 31st that P-1, you know, 4/18 throughout the
12   sub-agreement as the finding of the affordable sub-
13   agreement subject to --
14              MR. BARRY:  The order, yes.  If your Honor
15   were to agree to some or all of the points that I
16   raised in my November 6 letter, my points would have to
17   be incorporated in a new form of order.  I recognize
18   that.
19              THE COURT:  Okay.
20              But, paragraph 1D of the order says Schedules
21   A1 through C3 are the valid and binding fail amounts
22   (sic) and settlement amounts.
23              MR. BARRY:  Right.
24              THE COURT:  And, these scheduled in their
25   stated amounts and dates supercede the stated amounts
```

Colloquy                                                              8

```
 1    and stated dates in paragraphs 1, 4 and 5.  And, they
 2    are the paragraphs that I had questions with.
 3                Okay, so I think that language providing the
 4    schedules are ultimately approved would satisfy my
 5    inquiry.
 6                Now, as to Mr. Barry's specific objection
 7    which goes to not challenge the judgments in court the
 8    fees in any manner whatsoever, otherwise should be
 9    omitted. (sic)  And, that goes to the agreement.  And,
10    there's no mention of that in the order, right?
11                MR. BARRY:  That's right.
12                MR. REED:  That's correct, Judge.
13                THE COURT:  All right.
14                What is agreed?  Both parties agreed to the
15    banks method of calculating the balance due and on the
16    judgments that are set forth in the said exhibits.
17    Period.
18                I don't think you need the rest of that Mr.
19    Reed.  Tell me why that's necessary.
20                MR. REED:  Judge, the --
21                THE COURT:  In light -- I know your history
22    and I know the history of the case and I can't blame
23    you for wanting to say it.  But, I think it's
24    redundant.
25                MR. REED:  Your Honor, it can never be
```

Colloquy                                                              9

```
 1    enough.  There's one thing that the Quinn have
 2    challenged from the beginning of time which is the
 3    calculate, the calculations of how much was due.  And,
 4    at would be one of the most important things of the
 5    agreement, the most important thing, they have said.
 6                THE COURT:  Well, they're saying that.
 7    They're not challenging and they can't challenge the
 8    calculation of the balance due on the judgement as set
 9    forth in the exhibits approved by the Court.
10                But, to go further to say the Quinn's parties
11    agree and stipulate to never again challenge those
12    judgments in any manner whatsoever, in court or
13    otherwise --
14                MR. REED:  That language, Judge, you're
15    opening up a situation where the -- where we're going
16    to challenge the calculations that are ordered.  An
17    incorrect calculation of the amount due at some time or
18    seek another motion in court.
19                THE COURT:  You can't, how?  There's no way
20    with -- with the language up to that point.  The
21    calculation and balances due on the judgments stays as
22    set forth in the exhibits which are incorporated by the
23    order.
24                MR. BARRY:  You know, to some degree we've
25    over complicated this issue in this way.  If your Honor
```

Colloquy                                    10

```
 1    fixed the amount due in principal in the amount of
 2    interest as of, just for example, December 1, 2007.
 3    That's pretty much the end of the matter.  But the
 4    calculation of what's due at some future point is going
 5    to have to be done there.  I mean there's no way to
 6    calculate now what's due on a particular date.  Because
 7    we don't know what advances will be made.  And, we
 8    don't know what the date of the closing is.
 9            But, if your Honor says as of any date, you
10    know you might as well pick a date, as of that date the
11    amount of interest due is X and the amount of principle
12    is do as Y, it seems to me that's the end of it.
13            THE COURT:  I think the schedules show that.
14            MR. BARRY:  They do.
15            THE COURT:  But, it could show further and it
16    shows that the amounts due --
17            MR. BARRY:  At some future date.
18            THE COURT:  -- at future date.  But, they're
19    also going to be approved.
20            MR. BARRY:  And, that's based on --
21            THE COURT:  And, absent -- absent, you know,
22    providing for certain continued seasoned certain dates
23    within the -- the next year or year and a half.
24            MR. BARRY:  Right.
25            THE COURT:  But, beyond that, you know, that
```

Colloquy                                    11

```
 1    schedule would remain in effect and cannot go
 2    challenged except for to the extent that the bank
 3    exercises its option to increase moneys into the -- or
 4    pay moneys into it for whatever reason, like taxes and
 5    the like.
 6            MR. BARRY:  Sure.
 7            THE COURT:  Which would be documented and
 8    which --
 9            MR. BARRY:  You'd have to compute that in
10    time.
11            THE COURT:  And, that's the only subject
12    matter that could be attacked.
13            MR. BARRY:  I think that's what we all
14    anticipated, yes.
15            THE COURT:  And, that's -- that's a
16    mathematical question.
17            MR. BARRY:  And --
18            THE COURT:  Because it's not even -- it can't
19    even be the challenge to the exercise of the option.
20    Because it's --
21            MR. BARRY:  You pay taxes on it.
22            THE COURT:  Yeah, it's -- it's --
23            MR. BARRY:  The guys got a shot in the hat.
24    What could you say?
25            THE COURT:  It's absolutely unfettered.  The
```

Colloquy                                                        12

```
 1    bank has -- there's language in this agreement and in
 2    the order that says the bank has the total discretion
 3    to either do it or not do it.
 4              MR. BARRY:  There's no dispute about that.
 5    And, of course if the bank didn't pay the taxes and the
 6    property went to closing the taxes would have to be
 7    paid anyway.
 8              THE COURT:  That's correct.
 9              MR. BARRY:  It just wouldn't have been
10    advanced by the bank.
11              THE COURT:  So, based upon -- what I am
12    saying and I -- Mr. Reed.
13              MR. REED:  Yes, your Honor.
14              THE COURT:  We've been going down this road
15    for a long time, all of us the two of you and others.
16    And, I can -- I can understand what you're saying and I
17    can -- but I can't agree that that language is
18    necessary to this agreement.
19              MR. REED:  Well, that language was also part
20    of our original transcript of the settlement agreement,
21    Judge, I believe.  I go back I don't I haven't things
22    to pick up.  I don't mean to go back to the transcript
23    for what they agreed to.  But, I could do all that and
24    that language I would -- that language is important,
25    Judge, because it is saying that the Quinn's are never
```

Colloquy                                                        13

```
 1    going to account to these judgments again.  And, that
 2    is now the basis of their entire action from their --
 3              MR. BARRY:  Well, that's a different point
 4    and that is challenging the judgment.  Obviously the
 5    case settled the judgment or the judgments.  Everyone
 6    agrees to that.
 7              But, with the post judgment advances and the
 8    consultation of interest, you know, you can come up
 9    with different figures.  I -- I appreciate what you've
10    all gone through in this case and I sympathize with
11    everybody based on my short involvement.
12              But, Judge, whatever you rule here is --
13              THE COURT:  Well, I understand that.  But, I
14    -- go ahead.
15              MR. REED:  Judge, may I speak?
16              THE COURT:  Go ahead.
17              MR. REED:  It's very limited, it doesn't say
18    it's a challenge and they'll never agree to challenge
19    the judgment again in any order or otherwise.  And,
20    again that's been the basis of their entire action in
21    all of their litigation.
22              THE COURT:  Right.
23              MR. REED:  And, I will look back at the
24    transcript as soon as I can put my fingers on it
25    because I would not want to give up on this at this
```

Colloquy                                          14

1    point.
2              THE COURT:  No, listen to me, please.
3              The language that's staying in says, further
4    the Quinn parties agree to the bank's method of
5    calculating the balances due on the judgments as set
6    forth in said exhibits and the Quinn parties -- forget
7    and the Quinn party.  What I'm saying is set forth in
8    the exhibits.  Period.
9              Now, that being said the further language
10   that the parties agree and can never challenge those
11   judgments in any matter whatsoever and in court or
12   otherwise really says the same thing.
13             MR. REED:  You know, the Judge, we're talking
14   about the -- the great -- the first part of that
15   sentence is discusses the balances due on the judgment.
16             The second part of the sentence says that
17   they're not going to challenge ever again the basis of
18   those judgments.
19             For example that a default judgment was
20   entered when Mr. Plaintiff had made arguments that they
21   -- that the default should not have been entered or it
22   should have been vacated.
23             MR. BARRY:  I certainly didn't mean to raise
24   that issue in my letter.  I understand your point and I
25   don't consider that.

Colloquy                                          15

1              THE COURT:  Now, that's something that --
2              MR. BARRY:  That's all over.
3              THE COURT:  Yeah, I -- that would be done by
4    appeal or reconsideration, all those things are done.
5              I'm trying to --
6              MR. REED:  And, Judge, I really don't even
7    think we need to go down this road again.  If I -- if I
8    can just take a moment and see if I can ask you the
9    favor of trying to find that transcript, and while --
10   so it's not to delay things here to see, well look I do
11   have the terms here that we read into the record, at
12   least we --
13             Okay, this is yes, Judge.  The letter that I
14   believe was read into court and I have a copy of it
15   here, the term letter.  It does say in the first set of
16   terms that I think that Frank Corrado had read into the
17   record if he read all this paragraph which I believe he
18   did.  It does exactly say that.  They'll never
19   challenge those judgments in court or otherwise.
20             MR. BARRY:  What page are you on?  On the
21   transcript.
22             MR. REED:  No, I didn't get the transcript.
23   I'm saying look at the term sheet letter --
24             MR. BARRY:  I have them here.
25             MR. REED:  -- that he was reading when he

Colloquy                                    16

1   read the sums into the record in June 11th.
2              THE COURT:  Well, it's a question of how
3   broadly this will be interpreted then, or attempted to
4   be interpreted.  So, long as the bank is not going to
5   take the position that the calculations for additional
6   amounts due over and above the exhibits.  That's what I
7   think Mr. Barry is seeking to preserve.
8              MR. REED:  When then he had preserved that in
9   our agreement where it says that that we have to prove
10  -- when we made an advance of the bank has to provide
11  -- let me just find the exact language in here, Judge.
12  But, it does protect them in that regard.  That was
13  negotiated between me and Frank Corrado.
14             THE COURT:  All right, if that's -- if that's
15  there then you -- then I would accept that provision as
16  it is given what's been told to me thus far because it
17  appears to me that the only time that there can be any
18  controversy with respect to this is if in the event of
19  tax -- tax requirements, insurance requirements paid by
20  the bank and additional amounts are added to the
21  schedules.
22             MR. REED:  Yes, Judge.
23             Next paragraph in the sums agreement (sic) in
24  paragraph 2, the second to the last sentence.
25             THE COURT:  The Quinn parties unconditionally

Colloquy                                    17

1   agree to waive any right to challenge any future
2   advances and any requests to amend --
3              MR. REED:  Or proven and paid expenses.
4              THE COURT:  -- or proven and paid expenses.
5              MR. REED:  And, further that -- and further
6   up in that paragraph --
7              MR. BARRY:  Well, here's what the transcript
8   says.  It states in the transcript.  I'm reading in
9   line 9.  This is Frank Corrado telling you, your Honor,
10  what the agreement is.
11             The Quinn entities, meaning Quinn-Woodbine,
12  so and so forth, will agree to the calculations of
13  Chancery judgment balances and will not challenge those
14  in court.
15             The settlement amount which I'll get to in a
16  minute will be increased to the extent the bank has to
17  make any payment for real estate taxes or liens on the
18  property subject to the foreclosure judgment here.
19  It's a bindery property in Woodbine.  And, the
20  settlement anticipates the Quinn's making those
21  payments.  But, it should be possible should it happen
22  during the summer period that the bank makes those
23  payments then the Quinn's recognize that they will be,
24  they will have to reimburse the bank for those
25  payments.  That's -- that's what was put on the record.

```
 1            And, another thing there's no dispute about
 2    that.  I think there's no dispute among them between me
 3    and Mr. Reed that the day of the judgment is December
 4    of '06 (sic) an amendment judgment saying it's not due
 5    whatever it is on the foreclosure judgments.  There's
 6    no dispute about that.  There's no dispute that any
 7    future advances have to be repaid.  And, I don't think
 8    we dispute that a judgment interest will run on any
 9    future advances.
10            MR. REED:  And, that to a degree and it also
11    says that the bank will provide an empire with not to
12    pay off of the amount due on the Chancery Division
13    judgment in the event the bank has to make any future
14    advances or payment.
15            MR. BARRY:  Sure.  But, what I think we're
16    disputing and -- and perhaps I'm wrong is if the bank
17    wants to say that the Quinn can never say, wait a
18    minute, your math is wrong.  That's not a question of
19    the taxes or the underlying judgment.  It's just saying
20    wait a minute you've got the interest rate wrong.  Or
21    you started from the wrong date.  It's minor stuff.
22    And, I appreciate why the bank doesn't want to go down
23    that road.  But, people work for banks because you
24    don't go to work computing numbers of the bank because
25    you're a brilliant person, mistakes are made, you know.
```

```
 1            MR. REED:  Well, Steve you're saying then
 2    that --
 3            THE COURT:  All right, how about we just say
 4    that with that paragraph in quarter or otherwise accept
 5    to correct mathematical calculations.
 6            MR. REED:  Oh Judge, please no.  There's no
 7    way we can have a provision in there where the claimer
 8    to allowed the calculations of the bank after this
 9    agreement is settled?
10            THE COURT:  No, no as to any additional
11    payments.  As to any additional sums over and above.
12            MR. BARRY:  If the bank --
13            THE COURT:  Go on, I'm listening.  I have an
14    open mind guys.
15            MR. REED:  Judge, if we put -- I mean, it's
16    gonna be -- we have to -- Frank Corrado and I
17    negotiated at Frank's request, the Quinn's request to
18    interact to that the bank has to provide proof of this
19    advances.  And, --
20            MR. BARRY:  More than that monthly statements
21    would be on that.
22            MR. REED:  Well, just don't say what they
23    think. (sic)
24            MR. BARRY:  I know because now you don't want
25    to do it, but that's okay.  We don't mind.
```

Colloquy                                                    20

```
 1          MR. REED:  Well, you're getting more than
 2   that with this agreement is what you're getting
 3   actually.
 4          MR. BARRY:  Whatever.
 5          MR. REED:  The point is, Judge, that the
 6   advances, even this month in November real estate taxes
 7   will have to be paid.  And, the Quinn's can call the
 8   tax collector and they can get that amount.  We're
 9   gonna -- we'll tell them the amount if they want us to
10   tell the amount.  We have to prove if we're going to
11   add it to the advance for the taxes.  We have to prove
12   that we've made that payment which is very easy to do.
13          MR. BARRY:  It's unlikely to (Indiscernible -
14   garbled).
15          MR. REED:  And, then -- and then we have --
16   and then under this agreement we agreed to provide them
17   with an updated payment amount, pay off of a Chancery
18   Division, Judge, on that advance.
19          There's really -- there should absolutely be
20   no other -- there should be no challenge.  There should
21   be no -- no -- no error -- area for dispute for what
22   the payoff should be.  If they stipulate that the
23   exhibits are correct and they're never going to
24   challenge the judgments against them.
25          MR. BARRY:  You don't stipulate to anything
```

Colloquy                                                    21

```
 1   at this point.
 2          I think what -- my understanding where we are
 3   right now in this is this --
 4          MR. REED:  We're talking about -- excuse me.
 5   We're talking about how to calculate post judgment
 6   interest --
 7          MR. BARRY:  Right.
 8          MR. REED:  -- after adding in say an advance
 9   of $3,000 for taxes.
10          MR. BARRY:  Sure.  Which is easy enough to
11   do.
12          MR. REED:  And, if the Quinn's really had a
13   -- had a break that we calculated at 4 percent rather
14   than 3 percent, well we're not saying that they
15   couldn't adjust to that.
16          MR. BARRY:  Well, the way you've worded it it
17   certainly does say that.  But, --
18          MR. REED:  It doesn't say that.
19          MR. BARRY:  Well, I view it that way.
20          MR. REED:  It wouldn't say that.
21          MR. BARRY:  In that paragraph that -- I think
22   what you really mean is those judgments can't be
23   attacked.  We all agree to that.
24          MR. REED:  No, you can't, not now, but the
25   amounts as set forth in the schedule can't be attacked.
```

Colloquy                                                                22

```
 1          MR. BARRY:  Right.  But, we're attacking them
 2    right now and my understanding is that within the next
 3    week or so Judge Visalli can simply fix that amount.
 4    And, the amount is subject to a court order and -- and
 5    from your point of view hopefully what's exactly in the
 6    schedules and maybe it will be.
 7          THE COURT:  All right, what have we done?
 8    That means that given what -- what counsel has just
 9    said, and this Court's review of the documents, I am
10    now satisfied.  And, why would you need an agreement
11    together with a modifying language in the order that is
12    appropriate to satisfy the requirements of the
13    agreement and that Mr. Barry's objections, or his
14    client's objections as to paragraphs 1 and 2, 2
15    requiring the monthly statements, which I'll talk about
16    in a moment, are overruled.  And, I'm going to accept
17    the bank's language.
18          But, I think that if any of the -- any of the
19    problems that have been named do come that none of that
20    language would.  While on the one hand Mr. Barry sees
21    that language as absolutely precluding anything by the
22    Quinn's except to accept whatever the bank says I think
23    that that's too broad.
24          If it comes back to me and I'm here I
25    certainly wouldn't accept that.  If there's something
```

Colloquy                                                                23

```
 1    obvious and adverse as a improper charge of interest
 2    when a charge of 4 when it should be 3, that should be
 3    corrected even with this language.
 4          And, Mr. Reed I don't think you can dispute
 5    that.
 6          MR. REED:  I will not dispute that and -- and
 7    as long as their objection is limited and we're clear
 8    that the Quinn's objection to the calculation of the
 9    amount due can only be and will only be an objection, a
10    pop law (sic) objection to how the bank calculated post
11    judgment interest on any advance.
12          THE COURT:  I think that's all we're talking
13    about.
14          MR. REED:  That's all we're talking about.
15    But, otherwise --
16          MR. BARRY:  We started talking about.  I
17    think your Honor's position for how to deal with the
18    schedules obviates the whole rest of it because --
19          THE COURT:  That's right.
20          MR. BARRY:  -- for our rule to decide. (sic)
21          THE COURT:  You know, subject to the approval
22    of the schedules that, in fact, addresses those items.
23    And, with regard to paragraph 2 and the requirement of
24    the monthly statements I am satisfied that once these
25    schedules are completely developed and approved by the
```

Colloquy                                                    24

```
 1     Court that more than -- together with the obligations
 2     of the bank to continually to notify the defendants of
 3     any advance and the reasons and the amounts of the
 4     advance, whether it be for taxes or insurance or
 5     maintenance, or maintaining the property, with those
 6     things being required by the bank and there's no
 7     dispute that this agreement and a court order requires
 8     that, that that adequately replaces any need for a
 9     monthly statement.  So, I'm satisfied as to that.
10               That brings us up to -- so there will be no
11     change respecting either of those things one or two.
12     Leaving only the -- the schedules to be reviewed.
13               Paragraph 10, the Quinn parties waive their
14     right to redemption should be omitted.  That right was
15     not waived at the settlement hearing nor was it ever
16     waived at a later time by implication.
17               Paragraph 10 appearing on Page -- Page 4.
18     What do you have to say in regard to that?  Any --
19     anything further Mr. Barry to elaborate on that?
20               MR. BARRY:  No, your Honor.  It's not a
21     complicated issue.
22               MR. REED:  And, Judge, I would just say your
23     Honor has already ruled on that on October 31st.  And,
24     we addressed it.
25               THE COURT:  What did I  say?
```

Colloquy                                                    25

```
 1               MR. REED:  You ruled -- you denied the
 2     objection.
 3               THE COURT:  Okay.
 4               Well, maybe I'm not reviewing it in the same
 5     way right now.
 6               The right to redemption is -- only comes
 7     about as a result of a sale, a sheriff's sale.
 8               MR. BARRY:  Right.
 9               THE COURT:  And, there's a certain period of
10     time within which they may exercise that.
11               MR. BARRY:  Yes.
12               THE COURT:  And, only then at that point they
13     would have to pay every penny that the bank has
14     expended to make the bank whole.  Not -- and at that
15     point they would not have any of the -- the advantages
16     of the agreement by way of reduction or otherwise.  It
17     goes back to the original judgments and the amounts
18     they're in.
19               The difficulty I suppose is if we're in
20     Chancery and talking about redemption they could
21     conceivably get the property back for payment of less
22     than the Law Division judgment.
23               MR. BARRY:  That's an interesting point which
24     I hadn't considered.  If it -- let's suppose
25     hypothetically the Quinn's just don't do anything and
```

Colloquy                                                    26

```
 1    Mr. Reed sets the sheriff's sale and there is a
 2    sheriff's sale -- sheriff's sale under the foreclosure
 3    judgment and there's a buyer for X dollars.  There is a
 4    brief right in redemption as I understand it.
 5              THE COURT:  It's 10 days I believe.
 6              MR. BARRY:  If the Quinn's came up with the
 7    money and paid the sheriff the money the bank isn't
 8    hurt about it and they aren't concerned about this.
 9              THE COURT:  They are hurt because then they
10    have to pursue any deficiency, right?
11              MR. REED:  That's essentially correct, Judge.
12              THE COURT:  And, the Law Division -- well,
13    the deficiency as opposed to the law.  The banks object
14    here is, of course and hopefully it's going to work
15    that way, were you're going to sell this and get the
16    advantage of the reduction.
17              But, if you don't the bank then wants to get
18    paid the amount of it's Law Division judgment.
19              MR. BARRY:  Uhm, we knew.
20              THE COURT:  And, the redemption --
21              MR. BARRY:  I -- I would carry the same.
22    (sic)
23              THE COURT:  The redemption I think would
24    interfere with that in some fashion.
25              But, let's go one step further.
```

Colloquy                                                    27

```
 1              MR. BARRY:  I had --  okay.
 2              THE COURT:  And, they're redeeming it that
 3    would mean the title would go to them.
 4              MR. BARRY:  Right.
 5              THE COURT:  And, the judgment would still be
 6    a lien on their property.
 7              MR. BARRY:  Well --
 8              THE COURT:  The Law Division judgment.
 9    Because that would not be satisfied by -- by the
10    Chancery Division sheriff's sale, would it?
11              MR. REED:  No, it would not, Judge.  Not
12    necessarily, although the --
13              MR. BARRY:  Any proceeds.
14              MR. REED:  Any proceeds will be applied
15    against the Law Division judgment.
16              THE COURT:  Yes.
17              MR. BARRY:  And, in addition suppose, you
18    know, I don't know, Jim Jones comes to the sheriff's
19    sale and buys the land.  The sheriff's sale we're
20    talking about.  I don't think there's any question but
21    what the bank is going to release the Law Division
22    judgments lien against this property.  So, the sheriff
23    can convey.
24              THE COURT:  Only in the event of a sheriff's
25    sale.  But, not in the event of an redemption.
```

Colloquy                                                    28

1        MR. BARRY:  Uhm, well, right.  A post sale of
2   redemption.  But, at that point like -- if the bank is
3   willing to let the property go to Jim Jones -- and this
4   is entirely theoretical concerns, judgment, this
5   question about the two judgments.  The bank would be
6   thrilled to get his whole Chancery judgment it seems to
7   me, they should be.
8        THE COURT:  They're thrilled to get it if
9   it's in accordance with their agreement.  But, if not
10   they'd rather roll the dice and try to get it all.
11        MR. BARRY:  Aa ha.
12        THE COURT:  That's all part of the quid pro
13   quo here as I see it.
14        MR. BARRY:  Okay.
15        THE COURT:  You know that's -- that's, you
16   know while they're not going to go out there and try to
17   frustrate any sale, it's certainly something that I
18   think is in the back of the minds of the people at the
19   bank.  And, if this guy falls on his face we got this
20   to look forward to.  And, what you want to do is take
21   that away.
22        MR. REED:  The other concern, Judge, was the
23   ready redemption that this is a delay factor.  Because
24   the entire agreement is about having the bank to go
25   forward under at the foreclosure action.

Colloquy                                                    29

1        THE COURT:  The delay factor is not something
2   that -- that's statutory.
3        MR. BARRY:  Let's say that --
4        MR. REED:  It is ten days, Judge.  But, what
5   happens though that is if you have that right, you
6   know, they cut it off and as soon as they file a motion
7   in Chancery Division to gain an extension of that time.
8   And, that's what all the time the courts will grant
9   that.  And, then you're -- I've been involved in
10   litigations where it goes on for a long period of time.
11        THE COURT:  Yeah, I can -- I can see that and
12   I -- I could anticipate that.
13        MR. REED:  We have to foreclose that as a pos
14   -- as a time and pose that as a possibility for further
15   delays.  And we certainly --
16        THE COURT:  The other question is whether --
17   whether you can even waive that right of redemption.  I
18   don't know.  I don't know if there's laws to that
19   effect or not.
20        MR. BARRY:  Well, that one big shot at it and
21   you know --
22        THE COURT:  The point is that with that
23   language in there I don't know that any court would
24   approve that in any event.  While it looks good here in
25   the agreement and it certainly weights upon the Judge's

Colloquy                                              30

1   mind in reviewing it that that's what you agreed to, if
2   there's law out there that says the statutory right to
3   redemption -- and there's something on my mind says
4   there's something out there about that, cannot be
5   waived, then that's another problem.
6           MR. BARRY:  Right.
7           THE COURT:  Are -- are you aware of any such
8   law Mr. Reed?
9           MR. REED:  No, I'm not, Judge.
10          THE COURT:  Of cases?
11          MR. BARRY:  No, there's nothing that I know
12  about.
13          THE COURT:  None of us have researched it
14  but --
15          MR. REED:  I'm not -- I'm not aware of it,
16  Judge one way or the other.  Well, I could say that in
17  my opinion without doing any research and alphabetical
18  waive (Indiscernible - garbled)
19          THE COURT:  All right.
20          MR. REED:  But, you know again I -- I have no
21  way to verify that. (sic)
22          Judge, there are -- there are prohibitions, I
23  believe against having a -- an individual -- individual
24  waive their right to file bankruptcy.
25          MR. BARRY:  Just on the force of that. (sic)

Colloquy                                              31

1           THE COURT:  Yeah, which might be the same
2   thing with redemption.  I -- I don't know, but it's
3   something that I'm not going to worry about right now.
4           The right of redemption is complicated by
5   what Mr. Reed's concerns are.  That this could go on
6   and on and on which is really the history of the case.
7   And, I can't blame the bank for taking the position
8   they have with regard to drawing a line in the sand and
9   saying this is it boy.  I'm not a person who favors
10  their drawing a lines in sand, I always like some
11  flexibility.  But here I think that history gives way
12  to something other than that.
13          The right of redemption assuming it's
14  waivable can create the problems as indicated by Mr.
15  Reed.  But, further the right of redemption begins at a
16  certain point, doesn't it?
17          MR. BARRY:  I -- I think so.
18          THE COURT:  Is it at the sale or is it at the
19  transfer of the deed?
20          MR. BARRY:  I thought the sale.  I thought
21  once the deed was transferred it was too late.  That's
22  what I thought.
23          THE COURT:  I'm not sure.  I think there's
24  been recent case law -- something in my head says that
25  there was a delay in the issuance of the deed because

Colloquy                                                              32

1    there was a -- what happens at the sheriff's sale
2    there's a deposit was given and you have ex amount of
3    time maybe 30 days to come up with the balance.  And,
4    then the sheriff issues the deed.
5              None of that being statutory and I think its
6    totally within the sheriff's discretion.  And, the
7    sheriff can extend the time for payment.
8              So, to the extent that if I am correct and I
9    can't bet on this or anything like that, but if I'm
10   correct the right of redemption doesn't run until the
11   deed is conveyed.  That supports Mr. Reed's position.
12   To say nothing about the other position that I've
13   already articulated with respect to the bank's right to
14   seek payment in full in the Law Division judgment which
15   even with a redemption may be protected if my analysis
16   is correct.  If there were redemption to the debtor.
17   To someone else there wouldn't be but that wouldn't be
18   a redemption.
19             In any event, the language as is is approved
20   and I'm going to allow that to stay in.  Including the
21   waiver of the redemption.
22             Next is paragraph 13.
23             MR. BARRY:  I think a way to dispose of that.
24             THE COURT:  13.
25             MR. BARRY:  An earlier comment you made, your

Colloquy                                                              33

1    Honor.  You said the bank should follow certification
2    and just proffer. (sic)  You don't have to make a
3    motion.  Just to say it's part of a sheriff or a
4    sheriff sale they can send a copy. So, I'm sure they
5    would do anyway.
6              THE COURT:  Paragraph 13 addresses improper
7    to collect simultaneously.
8              MR. BARRY:  My first thing about paragraph
9    13, I -- I make two points about paragraph 13.
10             THE COURT:  Oh, yes, okay.
11             MR. BARRY:  First it has to do with notice
12   and all I'm saying is I think your early directive
13   obviates this issue.
14             THE COURT:  All right.
15             MR. BARRY:  The second point I made --
16             THE COURT:  As to paragraph 13.
17             MR. BARRY:  -- we also discussed.
18             THE COURT:  Simultaneously.  I think that can
19   be done so long as the appropriate credits are in there
20   can't be and will not be with notices being submitted.
21   There can't be a double recovery.
22             And, I think that's recognized in the
23   agreement and in the order saying that whatever is
24   collected will be credited against each judgment.
25             MR. REED:  That's correct, Judge.

Colloquy                                                    34

```
 1          THE COURT:  So, I don't see a problem with
 2   that to the extent that -- I don't see anything
 3   improper about proceeding to collect on the two
 4   judgments at the same time.  So long as --
 5          MR. BARRY:  You just want recovery for them.
 6          THE COURT:  That's correct.
 7          MR. BARRY:  The small one is subsumed in the
 8   bigger one.
 9          THE COURT:  Yeah.  I don't mean to create
10   problems but I -- I suppose that, you know, to the
11   extent the bank -- if by this language you're saying
12   that the bank should exhaust the subject property
13   first.
14          MR. BARRY:  I don't think that's an issue.
15          THE COURT:  Okay, all right.  So, that --
16   then I don't see a -- to the extent that it's necessary
17   the objections as to paragraph 13 are overruled.
18          15:  Final sentence should be omitted.  The
19   parties acknowledge the bank made no representations to
20   them regarding the environmental condition of the
21   property.
22          Mr. Barry is of the view that because there
23   had been some discussions that those discussions could
24   be characterized as representation regarding the
25   environmental condition of the property.
```

Colloquy                                                    35

```
 1          MR. BARRY: I mean -- I think its true that --
 2   our side of the case and the Quinn's side of the case
 3   has not relied on anybody's representations in entering
 4   into a disagreement.  I think this is just another
 5   banker's felts and suspenders thing (sic) and I
 6   understand why they're saying it but I, you know, I've
 7   been to raise this issue.
 8          THE COURT:  And, Mr. Reed, what do you have
 9   to say about that?  Paragraph 15.
10          MR. REED:  Right, Judge.  It's an objective
11   that is quite the (Indiscernible - inaudible) The Quinn
12   party can't possibly want to reserve the right to bring
13   an action or accuse -- to bring an action against the
14   bank and accusing the bank of taking some
15   representation stand regarding an environmental
16   condition of that property.  And, during, for example a
17   specific call that we had with the bank officer on the
18   line and going on line with Mr. Corrado.
19          Both discussions included the topic of one
20   specific both the same, phase 1, phase 2 my memorable
21   studies. (sic)
22          MR. BARRY:  October 31 when we discussed all
23   this on the record, your Honor, your Honor made
24   rulings.  Mr. Reed made the point that what -- I think
25   it's a question of the two sides seeing this issue
```

Colloquy                                                              36

```
 1    differently.
 2              What the bank wants is a release of all the
 3    Quinn's claims, including any release that if there's
 4    anything environmental out there even in these reports
 5    or otherwise.  And, I don't there's any dispute about
 6    that.
 7              MR. REED:  Right.  But, also that the Quinn's
 8    or the Quinn's release of paying also include any
 9    possible claim by the Quinn's that the bankers made a
10    visitation then regarding 100 percent of the property.
11    (sic)  Which they had not.
12              MR. BARRY:  I don't think there's any -- the
13    language probably inadvertently -- I agree with Mr.
14    Reed that these issues are gone from the cases.  The
15    Quinn's have contracted away by settlement all their
16    claims against the bank including this potential claim.
17              These too I was asked to raise a few issues.
18    It's not that there was no representation made.  It's
19    just -- I agree with Mr. Quinn that there's no
20    potential claim left as a result of the settlement.
21    That's all.
22              I don't see that -- that the resolution of
23    Tida White (sic) has any future practical consequences
24    to any party.
25              MR. REED:  Even important to the bank though
```

Colloquy                                                              37

```
 1    because we were touching on those subjects, we had
 2    settlement discussions where the Quinn's were on the
 3    line.  And, I want to make sure that the bank attested
 4    against any claims that the bank made a representation
 5    about any environmental position problems. (sic)
 6              THE COURT:  That's what you say in the order
 7    here.
 8              MR. REED:  That's correct.
 9              THE COURT:  Or the agreement.
10              MR. REED:  The Quinn's are asking for a copy
11    of our report (Indiscernible - inaudible)
12              THE COURT:  Did it give it to them?
13              MR. REED:  What's that, Judge?
14              THE COURT:  Did you give them the reports?
15              MR. REED:  It sets forth in the agreement
16    where we will provide them with copies of the reports
17    when they sign the bank's forms and/or applications.
18              THE COURT:  All right.
19              MR. REED:  But, that was a copy of the other
20    discussions (Indiscernible)
21              THE COURT:  All right, I don't see any need
22    to change anything in this regard.  Again, I'm going to
23    overrule that objection.
24              Paragraph 16:  The second sentence is
25    something.  There was no subject in the filing of the
```

Colloquy                                                        38

1    bankruptcy. And, I know we talked about this.
2              MR. BARRY: Yes.
3              THE COURT: Paragraph 16: Order supercedes
4    paragraph 16. The order itself addresses that.
5              Am I correct, the bankruptcy -- the language
6    in paragraph 4 of the order -- 3 and 4.
7              MR. BARRY: Of the order?
8              THE COURT: Yeah. Not 4, 3.
9              In the event Quinn-Woodbine my goal Quinn
10   instead of filing for relief those parties are each
11   hereby deemed to waive any and all objections to any
12   application bank is seeking. Read from the automatic
13   stay under Section 362. And, those parties are hereby
14   deemed to have unconditional consent to lift any future
15   automatic stay in the event any one of them seeks
16   relief under the bankruptcy code.
17             MR. BARRY: I agree that your orders -- Mr.
18   Reed's order how that you just read it accurate states
19   what your Honor decided on October 31st?
20             THE COURT: Right.
21             MR. BARRY: But, the problem is that the
22   order also incorporates the form of a agreement and the
23   form of agreement has all this extra language about,
24   you know, the stakes will be driven through the Quinn's
25   children's hearts if they file bankruptcy.


Colloquy                                                        39

1              THE COURT: Oh, why don't you be nice?
2              MR. BARRY: Fair.
3              THE COURT: Anyway, Mr. Reed, am I not
4    correct that we developed that language to supercede
5    the language of paragraph 16?
6              MR. REED: Judge, that wasn't my
7    understanding.
8              THE COURT: Okay.
9              But this is just additional language?
10             MR. REED: That's right.
11             THE COURT: Well, I -- is it additional
12   language or clarifying or definitive language to
13   paragraph 16?
14             MR. REED: Uhm --
15             THE COURT: I don't see it being additional
16   because it's a short way of saying most of what you
17   said in paragraph 16. And, the issue that I addressed
18   is whether or not the bank would be entitled to a
19   dismissal of any bankruptcy. We discussed matters in
20   which that would be unnecessary. And, why would you
21   need a dismissal so long as you have the ability to get
22   this property out of bankruptcy?
23             That's -- that's the object here is to get
24   this property either sold or go to a sheriff's sale.
25             MR. REED: But, it's also the object of the

1   bank not to be involved in litigation.  And, if there's
2   an ongoing bankruptcy it's -- the sole purpose of the
3   bankruptcy would only be to delay the bank.  There
4   would be no other reason for Quinn-Woodbine -- Quinn-
5   Woodbine Reality and Leasing which is the owner of the
6   property to file bankruptcy.
7              THE COURT:  Well, is there -- is there a way
8   to continue that once you have their consent to get the
9   property out of the bankruptcy?
10             MR. REED:  But, that wouldn't stop the
11  Quinn's from making various claims in the bankruptcy
12  litigating with the bank in the bankruptcy and the bank
13  having to occur time and expense in defending those
14  claims in the bankruptcy that was filed weekly would be
15  in that day. (sic)
16             MR. BARRY:  And, you'd have to prove that.
17             MR. REED:  I'm saying, in my opinion it would
18  be in bad faith.  There would be no other reason for
19  Quinn-Woodbine Reality to file bankruptcy.  That would
20  be their last delay tactic in this entire case.  If
21  they file bankruptcy they're doing it for just one --
22  one reason.  And, that is to stop the bank's
23  foreclosure or delay it.
24             MR. BARRY:  Well, filing a bankruptcy to stop
25  foreclosure is not filing bankruptcy in bad faith

1   anyway.
2              MR. REED:  It is in my opinion after entering
3   this agreement, yes it is.
4              MR. BARRY:  I mean, everybody is entitled to
5   their opinion.  But, once you've got a relief in the
6   stay the bankruptcy doesn't own it anyway.
7              MR. REED:  Except that I had to have a forum
8   to continue making claims and allegations to an
9   unfamiliar Judge and force the bank to spend thousands
10  of dollars in legal fees.
11             MR. BARRY:  Certainly you got a release of
12  all those claims here.
13             MR. REED:  That would be our defense.  I
14  mean, those claims are not going to be made.
15  Especially with those bankruptcy lawyer on a big
16  container -- retainer, I mean.
17             MR. BARRY:  Either one, retainer mortgage
18  they are.
19             MR. REED:  Right.
20             THE COURT:  We -- You have to admiss -- admit
21  Mr. Barry that the bank's whole purpose here is to get
22  paid and to get this off of serum.
23             MR. BARRY:  It's always a bank's goal --
24             THE COURT:  Well --
25             MR. BARRY:  -- in every case and I don't mean

Colloquy                                              42

```
 1    that as a criticism.
 2              THE COURT:  No, no, no.  But, I understand.
 3    But, I'm also saying to you that this is a highly
 4    unusual foreclosure that's going on from -- I'm sure
 5    there's others, but it's going on for as long as it
 6    has.  And, the --
 7              MR. BARRY:  And, my wife and it's owners,
 8    there's no question about it. (sic)
 9              THE COURT:  And, the bank is really seeking
10    along this line the same.
11              MR. BARRY:  There's no question about it.
12              THE COURT:  And, they don't want that -- they
13    don't want that line moved for any reason.  And, I
14    can't disagree with that.
15              MR. BARRY:  Well, it's a combination of
16    cynicism and paranoia.
17              THE COURT:  Yeah.
18              MR. BARRY:  None of us know that much
19    about --
20              THE COURT:  There's a lack of trust on both
21    sides, you know.
22              MR. BARRY:  Absolutely.  And, probably not
23    enforceable anyway, so --
24              THE COURT:  Well, that may be.
25              MR. BARRY:  It depends on factors that none
```

Colloquy                                              43

```
 1    of us know about, you know.
 2              MR. REED:  Mr. a -- Steve, your only
 3    objection was that this second half -- second sentence
 4    in that paragraph 16.  Not even on these other issues.
 5              MR. BARRY:  Right.
 6              MR. REED:  And, that second sentence is that
 7    vis-a-vis in the amount of default.
 8              MR. BARRY:  Right.
 9              MR. REED:  If any Quinn party files
10    bankruptcy.
11              MR. BARRY:  Right.  Because I think the other
12    issues were thrashed out in October 31.
13              MR. REED:  Right.
14              MR. BARRY:  And, paragraph 3 of the order
15    supercedes that.  This point about it being a
16    preventative default.  I exasperated that point.  I
17    don't think it's meaning -- I don't think frankly to be
18    candid with both of you, it's a meaningful point.
19              In every loan situation where there's
20    bankruptcy of a creditor, or a debtor, creditor always
21    says it a default.  I mean, it doesn't mean anything,
22    they're in bankruptcy.  Obviously there's no payment on
23    the account.  It's a non-issue.  And, I was asked to
24    raise it and I raised it but -- but if the Quinn's file
25    a bankruptcy it's going to be after the 18 months run
```

```
 1    anyway.  So, it doesn't even mean anything in this
 2    issue I think.
 3            MR. REED:  Well, they could file bankruptcy
 4    at anytime.
 5            MR. BARRY:  Well, they could but why would
 6    they?
 7            MR. REED:  I can't get into their minds and
 8    their strategies, that's for sure.
 9            THE COURT:  Well, there's disagreement from
10    what you're both saying here as to whether paragraph 3
11    supercedes the entirety or any part of paragraph 16.
12            Mr. Barry, you just said you believe it
13    supercedes.  And, I think Mr. Reed indicated previously
14    saying it did not.
15            MR. BARRY:  Right.  That's going to be your
16    call, your Honor.
17            MR. REED:  And, even if it -- I mean it -- I
18    don't think it supercedes, Judge.  And, even if it does
19    supercede even Mr. Barry says it only -- his argument
20    says it only supercedes a portion of paragraph 16.
21    Because otherwise he wouldn't be arguing that the
22    second sentence is still application.
23            THE COURT:  What portion do you perceive him
24    to say it supercedes?
25            MR. REED:  What do I say?
```

```
 1            THE COURT:  Yeah.
 2            MR. REED:  That's a good question, Judge,
 3    because I didn't think any of it was meant to
 4    supercede, just to clarify that paragraph.  So, I would
 5    now have to look at the paragraph and -- and see what
 6    parts that the orders form, you know paragraph 3 of
 7    that form of order would potentially supercede that
 8    paragraph 16 and part of it.
 9            And, the only objections before that they had
10    were that it was concerned about 16 of the settlement
11    agreement was that the dismissal of the bankruptcy and
12    off to the bank that filed it.  But, the rest of it was
13    okay.
14            MR. BARRY:  Judge, to be clear my letter is
15    in error.  Paragraph 16 has to do with the
16    environmental issues.
17            Paragraph 17 of -- of the agreement found on
18    page 6 of Mr. Reed's form of agreement discusses
19    bankruptcy in detail.
20            MR. REED:  Right.
21            MR. BARRY:  And -- and paragraph 3 of the
22    order address that very same paragraph.
23            THE COURT:  Wow, wait a minute.
24            MR. BARRY:  I'm sorry.
25            THE COURT:  You two -- wait a minute.  It's
```

```
 1    paragraph 16 beginning on page 5, of the agreement.
 2    Not paragraph 17.
 3              MR. BARRY:  All right, sorry.
 4              THE COURT:  Are we in the same --
 5              MR. REED:  The job that I'm looking at is
 6    paragraph 16 is the bankruptcy provision.
 7              MR. BARRY:  You're right.  The number
 8    changed.  I -- I apologize it's 16.  I've got it here
 9    in front of me now.
10              THE COURT:  All right.
11              So, I still don't understand.  We have to
12    have some other language in this order then.  In the
13    event that Quinn filed that those are being deemed to
14    be waived, et cetera, et cetera.
15              I'm at a loss to understand how this says
16    anything if we're going to keep in paragraph 16.  Why
17    do we even need to have that?
18              MR. BARRY:  I think the bank --
19              MR. REED:  That's to (Indiscernible)
20              MR. BARRY:  The bank has two things and I
21    bargained for and it's entitled to.  One is a release
22    of all claims in any nature the Quinn's and the lease
23    may have against the bank.  They're all subsumed in
24    this agreement.
25              And, the other is that they consented and
```

```
 1    your Honor, and the form of the order is not in
 2    dispute.  They have consented to relief from any sale.
 3    So, I don't know what else they want, but that's gives
 4    them everything that they -- that they can get.  There
 5    isn't anything else.
 6              MR. REED:  Well, we have discussed this at
 7    length, Judge, and it was my understanding we
 8    acknowledged that your Honor did rule on these.  And,
 9    it was my understanding that -- that this language and
10    the form of order they provided was just clarification
11    of paragraph 16.  And -- and so that was -- that was
12    where, you know, I thought it otherwise.  I would have
13    put in the form of order that does supercede paragraph
14    16 and 16 is an annulled.
15              THE COURT:  Uh-huh.
16              MR. REED:  And, Mr. Barry's letter only
17    objected the second sentence of paragraph 16 in the
18    amount of default being the Quinn party or any of the
19    Quinn parties filing bankruptcy.
20              MR. BARRY:  I agree we understood what
21    happened differently.  And, I just said I think this
22    question of it being event of default is an issue
23    without any significance to anyone.
24              THE COURT:  So, it stays.
25              What about the rest of it?
```

Colloquy                                                    48

1              MR. BARRY:  The only other point I make in my
2     letter to you --
3              THE COURT:  No, no, what about the rest of
4     paragraph 16 and paragraph 3 of the order?
5              MR. BARRY:  In order to certainly like around
6     the date of the appearance before you when the case was
7     settled, there was never anything said on the record
8     about the Quinn's conceding of any -- conceding
9     prospectively that any filing that bankruptcy filing
10    would be in bad faith.  That's just, you know,
11    something that when the bankers sat around the table
12    and said boy that would be great to put that in.  But,
13    it's not something that was bargained for.
14              And, my understanding was the bank had on
15    October 31 when you ruled that -- that there's no
16    question that the statement could be left in and there
17    was no contempt for that.  That they got everything
18    that is possible to get in this case.  That was my
19    understanding but it's your Honor's call.  I'm sure I
20    recognize that.
21              MR. REED:  Well, I'm not so sure that's the
22    understanding, Judge.  Because I think, you know, the
23    Quinn's objections would have been what are articulated
24    is that.  But, when I think of only --
25              MR. BARRY:  We're not in need of the Quinn's

Colloquy                                                    49

1     objections.  (sic)
2              MR. REED:  What?
3              MR. BARRY:  I think we all understand,
4     hopefully you understand.
5              MR. REED:  If your Honor is going to revisit
6     the issue I -- I would just emphasize that the -- the
7     last lay package that the Quinn could possibly
8     implement in this whole case is to file the bankruptcy
9     of either themselves individually.  But, more likely
10    the bankruptcy of Quinn would bind reality and leasing.
11              And, the only reason they would do that is to
12    -- is to frustrate and delay the purpose of this whole
13    agreement.  And, the fact that they're fighting on this
14    issue just shows you that the fact that is made -- that
15    is a delay tactic that they want to keep it in their
16    pocket.  Which is contrary to the entire intense care
17    of this agreement.
18              And, it is unquestionable in my opinion, of
19    course it's my opinion, in my opinion and that would be
20    a bad faith file.  And, they should -- they should --
21              THE COURT:  I -- I --
22              MR. REED:  And, I am surprise that they even
23    objected to this paragraph and would put that before
24    your Honor and let your Honor read it for a moment.
25    And, they might want to preserve the right to file

Colloquy                                                    50

1    bankruptcy and preserve the fact that it's not a bad
2    faith filing. (sic)
3              MR. BARRY:  This discussion has gone actually
4    its substantive value the point I raise. (sic)   I
5    thought this issue was behind us frankly.
6              THE COURT:  Well, yeah because you're
7    believing that paragraph 3 solved it and it doesn't.
8    Paragraph 3 of the order solves the entirety.  But, I
9    know, we -- we -- I know we talked about the banks
10   write up dismissal and I wasn't -- I didn't think you
11   had that argument and I still don't think you had that
12   argument.  Nor do I -- nor do I say that you're
13   entitled to an inference or a presumption of bad faith,
14   in the event of the filing.  And, I think that's what
15   you're trying to get here Mr. Reed.
16             MR. REED:  Paragraph 16 states that if they
17   -- if they were to file bankruptcy then they would be
18   -- they agree that it would be a bad faith filing for a
19   improper purpose that to impede the bank such as rights
20   and remedies.
21             THE COURT: I -- I can't go along with that.
22   That was not what I intended when we talked about this
23   language.
24             While I can appreciate the bank's position I
25   think that entitlement to a dismissal is going to be

Colloquy                                                    51

1    the bank's call.  Not the bank's call but the
2    bankruptcy court's call.
3              And, bad faith, if they do file it and it's
4    ultimately determined to be in bad faith by the
5    bankruptcy court I think that's a call that has to be
6    made on the then -- then circumstances, by the whatever
7    -- by the Bankruptcy Court.  I think if -- if --
8              MR. REED:  Your Honor, then are you saying
9    the paragraph -- are you ruling then that if you
10   determine that 16 that that last phrase piece of -- of
11   paragraph C in paragraph 7 -- is not a -- is going to
12   be deleted?
13             THE COURT:  Yes.
14             MR. REED:  Would your Honor, then prefer us
15   to write in to where we have -- where I have my
16   proposed form of order in paragraph 3, would your Honor
17   then want us to write in at the end of that paragraph 3
18   in the form of order something like this paragraph --
19   paragraph 16 is another (Indiscernible) That's that
20   paragraph 16 of section C of that paragraph is deleted.
21   Then subparagraph C -- (sic)
22             THE COURT:  I think we have to -- we have to
23   go a little further than that.  What about B?
24             MR. REED:  Oh, that was a dismissal I
25   thought.  They both say dismissal.  I was thinking that

Colloquy                                52

```
 1    statement. (sic)  So, it would be -- it would be
 2    (Indiscernible)
 3              THE COURT:  So, what I'm saying is if that
 4    line there where it says provided by law preceding the
 5    letter B?
 6              MR. REED:  Yes.
 7              THE COURT:  Followed by a semicolon.  That
 8    should be a period.
 9              MR. REED:  I see, that's right, Judge, and
10    it's my apologies.  I'd seen the word dismissal in
11    paragraph C and I felt that --
12              THE COURT:  What I would -- what I would
13    offer here at this point is put an asterisk in the
14    order, paragraph 3 and go down to the bottom of that
15    asterisk and say that paragraph 3 above supercedes --
16    or not supercedes, but modifies the above paragraph to
17    the extent that paragraphs B or subparagraphs B and C
18    are deleted.  Okay?
19              MR. BARRY:  I understand.
20              MR. REED:  Yes, Judge, just so its clear that
21    the rest of the paragraph 16 is still applicable.
22              THE COURT:  The rest of the paragraph --
23              MR. REED:  The paragraph is not modified by
24    your form of order paragraph 3.
25              THE COURT:  No.  What I'm going to do is I
```

Colloquy                                53

```
 1    just want to take the agreement and draw a line through
 2    those paragraphs -- through those sentences to say that
 3    they're deleted as reflected.
 4              MR. REED:  That's correct.
 5              THE COURT:  Okay.  And, I'll just initial
 6    that, my initials on the agreement.  But refer to it in
 7    the order by placing as asterisk, which I'm doing right
 8    now next to bankruptcy code, okay?
 9              MR. REED:  Yes.
10              THE COURT:  I'm going down to the bottom and
11    saying, paragraph 16 as supplemented by a line in
12    paragraph 3 in this order and deleting as indicated in
13    the agreement by the interlineations.  Is that the
14    right word?  Made by the Court.
15              Does it make sense?
16              MR. BARRY:  I understand.
17              MR. REED:  I understand.
18              THE COURT:  Paragraph 16 of the agreement is
19    modified by paragraph 3 above.
20              MR. BARRY:  Judge, I would say supplement.
21              THE COURT:  Supplement.  I can spell modify
22    but I can't spell supplement.  By paragraph 3 above.
23              The interlineations appearing on the
24    agreement are deleted.  Okay?
25              MR. REED:  Yes sir.
```

Colloquy                                    54

```
 1              MR. BARRY:  Yes.
 2              THE COURT:  And, I am striking those parts
 3  that I've just described to you.  One, two, three,
 4  four, five, six, seventh, eighth line from the bottom
 5  words, provided by law appear and a semicolon.  I'm
 6  making the semicolon a period and interlining
 7  everything else.  Okay?
 8              MR. BARRY:  Yes sir.
 9              MR. REED:  Yes Judge.
10              THE COURT:  And, so the record is clear
11  without having to go through -- I'm not going to try to
12  write this, but if you need to you can get the
13  transcript.
14              MR. BARRY:  Yes sir.
15              THE COURT:  That does not -- that
16  interlineation does not mean -- this is it -- it is not
17  giving the bank a presumption or inference that there
18  would be bad faith in the event of a bankruptcy filing.
19              MR. BARRY:  I understand that.  It does say
20  if needed.
21              THE COURT:  That's right.  And, it works both
22  ways.
23              MR. BARRY:  I precluded from making that
24  argument actually.
25              THE COURT:  Right.
```

Colloquy                                    55

```
 1              MR. BARRY:  Sure.  I understand.
 2              THE COURT:  So, the bank can if they're faced
 3  with that situation can not say, look we've interlined
 4  that the bank gave up it's right to say we did this in
 5  bad faith and the like.  That's not what's happening
 6  here.
 7              MR. BARRY:  Right.  I take that point and I
 8  understand.  I never thought it was.
 9              THE COURT:  I wouldn't think you would --
10              MR. BARRY:  I know.
11              THE COURT:  -- but somebody later on may.
12              MR. BARRY:  I understand.
13              THE COURT:  The -- you have the lang -- the
14  interline -- the interlineations in paragraph 16, is
15  that acceptable?
16              MR. BARRY:  Do you mean there's a way to
17  handle this?
18              THE COURT:  I -- I'm -- as to the asterisk at
19  the bottom.  Interlineation.  I've taken, I've lined
20  out those questionable -- that questionable language.
21              MR. BARRY:  Yeah, I think we understand it.
22              MR. REED:  Yes, Judge, we understand.
23              THE COURT:  Paragraph 16 are deleted by the
24  Court.  Okay, I've interlined out and I'm placing my
25  initials in the margin.  I put that at the bottom of
```

Colloquy                                                           56

```
 1     the order.
 2              All right, now is there anything else left of
 3     this thing?
 4              MR. BARRY: No, your Honor.
 5              THE COURT: Oh, you want to get off the
 6     phone?
 7              MR. BARRY: No, it's always a pleasure
 8     talking to you and Mr. Reed. But, I think you've
 9     covered everything.
10              THE COURT: My final point subject of course
11     come about -- okay, that goes with the other -- with
12     comments on two receipt, right?
13              So, I'm going to hold this order yet with all
14     the modifications we've made to it. Ultimately I'm
15     going to change the Chancery order as I've indicated.
16              MR. BARRY: Yes sir.
17              THE COURT: And, then once I get the
18     schedules I'll attach that to the Agreement which is
19     marked.
20                        (Matter concluded)
21
22
23
24
25
```

                                                                  57

```
 1                      CERTIFICATION
 2     I, Charlotte Barone, the assigned transcriber, do
 3     hereby certify the foregoing transcript of proceedings
 4     on video tape number 07-082, is prepared in full
 5     compliance with the current Transcript Format for
 6     Judicial Proceedings and is a true and accurate
 7     compressed transcript of the proceedings as recorded.
 8
 9
10     _____
11     CHARLOTTE BARONE, AOC #229
12     Date:  January 15, 2008
```